# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABIGAIL ESQUIBEL, TAMMY SEARLE, JEREMY WAHL, AIMEN HALIM and NICHOLAS SALERNO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COLGATE-PALMOLIVE CO., and TOM'S OF MAINE, INC.,<br><br>    Defendants. | Case No. 1:23-cv-00742-RA |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

---

GREENBERG TRAURIG, LLP

Keith E. Smith
Libretta P. Stennes
Jaclyn DeMais
One Vanderbilt Ave
New York, New York 10017
Telephone: 212.801.9200
smithkei@gtlaw.com
libby.stennes@gtlaw.com
demaisj@gtlaw.com

*Attorneys for Defendants Colgate-Palmolive Company and Tom's of Maine, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS.....................................................................................5

ARGUMENT ......................................................................................................8

    I.      The Amended Complaint Fails to State a Claim under Rule 12(b)(6) .................8

            A.      Legal Standard ........................................................................8
            B.      Reasonable Consumers Would Not be Deceived by the Product's
                 Labeling or Marketing .............................................................9

    II.     Plaintiffs Do Not Satisfy Their Pleading Burdens.............................................16

            A.      Plaintiffs' Claims Do Not Comply With Rule 9(b)................................16
            B.      Plaintiffs Fail to Plausibly Allege that Tom's Had Knowledge of
                 PFAS in the Product ..............................................................17

    III.   Plaintiffs Lack Standing to Sustain Their Claims.................................................19

            A.      Plaintiffs' Conclusory Allegations of Injury Fail to Confer Article
                 III Standing ..........................................................................19
            B.      Plaintiffs Lack Standing to Bring Claims on a Nationwide Basis ...........24
            C.      Plaintiffs Lack Standing to Seek Injunctive Relief...............................26

    IV.   Plaintiffs' Claims Are Subject to Dismissal for Additional Independent
        Reasons.....................................................................................................27

            A.      Plaintiffs' FAL Claims (Count I) Fail to the Extent They Are
                 Based on Omissions ................................................................27
            B.      Plaintiffs' UCL Claims Fail......................................................27
            C.      Plaintiffs' Remaining California Claims (Count II and Count III)
                 Fail as They Rely on an Absent Duty to Disclose...................................28
            D.      Plaintiffs Fail to State a Claim for Unjust Enrichment............................30

    V.     Plaintiffs' Claims Must Be Dismissed Pursuant to the Primary Jurisdiction
        Doctrine.....................................................................................................31
    VI.   Plaintiffs Should be Denied Leave to Amend ....................................................33

CONCLUSION..................................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abuelhawa v. Santa Clara Univ.*,
  529 F. Supp. 3d 1059 (N.D. Cal. 2021)....................................................................30

*Akers v. Costco Wholesale Corp.*,
  2022 U.S. Dist. LEXIS 177837 (S.D. Ill. Sep. 29, 2022)........................................30

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) ....................................................................................20

*In re Arris Cable Modem Consumer Litig.*,
  2018 U.S. Dist. LEXIS 1817 (N.D. Cal. Jan. 4, 2018)....................................... 16, 31

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013)......................................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................9, 21

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018)........................................................... 12, 14, 15

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ..................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................9

*Bodle v. Johnson & Johnson Consumer*,
  No. 3:21-cv-07742-EMC (N.D. Cal. Feb. 24, 2022) ...............................................22

*Borchenko v. L'Oreal USA, Inc.*,
  389 F. Supp. 3d 769 (C.D. Cal. 2019).......................................................................28

*Bowen v. Energizer Holdings, Inc.*,
  2022 U.S. Dist. LEXIS 235416 (C.D. Cal. Aug. 29, 2022) .....................................22

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020).......................................................................30

*Brown v. Cerberus Capital Mgmt., L.P.*,
  703 F. App'x 11 (2d Cir. 2017) .................................................................................33

*Brown v. COTY, Inc*,
  2023 U.S. Dist. LEXIS 54316 (S.D.N.Y. Mar. 29, 2023)................................... 11, 12

*Calcano v. Swarovski N. Am. Ltd.*,
  36 F.4th 68 (2d Cir. 2022) ...................................................................................19, 21

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ....................................................................................19

*Christia v. Trader Joe's Co.*,
   2022 U.S. Dist. LEXIS 222194 (N.D. Ill. Dec. 9, 2022)....................................................19

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..........................................................................................................26

*Corcoran v. CVS Health Corp.*,
   2016 U.S. Dist. LEXIS 99797 (N.D. Cal. July 29, 2016) ................................................25

*Culver v. Unilever United States, Inc.*,
   2021 U.S. Dist. LEXIS 133295 (C.D. Cal. June 14, 2021) ..............................................10

*DaCorta v. AM Retail Grp., Inc.*,
   2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ....................................................................26

*Dana v. Hershey Co.*,
   180 F. Supp. 3d 652 (N.D. Cal. 2016)..............................................................................27

*Davidson v. Sprout Foods Inc.*,
   2022 U.S. Dist. LEXIS 121893 (N.D. Cal. July 11, 2022) ..............................................10

*Davis v. FEC*,
   554 U.S. 724 (2008) ........................................................................................................24

*Davis v. HSBC Bank*,
   691 F. 3d 1152 (9th Cir. 2012) ........................................................................................28

*Davito v. Amtrust Bank*,
   743 F.Supp.2d 114 (E.D.N.Y. 2010)................................................................................25

*Dicicco v. PVH Corp.*,
   2020 U.S. Dist. LEXIS 160465 (S.D.N.Y. Sept. 2, 2020) ...............................................16

*In re Direxion ETF Tr.*,
   279 F.R.D. 221 (S.D.N.Y. 2012) .....................................................................................24

*Doss v. General Mills, Inc.*,
   816 F. App'x 312 (11th Cir. 2020) ...................................................................................21

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021)..............................................................................28

*Ellis v. Tribune Television Co.*,
   443 F.3d 71 (2d Cir. 2006) ..............................................................................................31

*Fahey v. Deoleo USA, Inc.*,
   2018 U.S. Dist. LEXIS 190934 (D.D.C. Nov. 8, 2018)....................................................21

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ............................................................................................11

*Freeman v. Time, Inc.*,
   68 F. 3d 285 (9th Cir. 1995) ..............................................................................................9

*Gaminde v. Lang Pharma Nutrition, Inc.*,
   2019 U.S. Dist. LEXIS 48595 (N.D.N.Y. 2019) ..............................................................20

*Geffner v. Coca-Cola Co.*,
  928 F.3d 198 (2d Cir. 2019) .............................................................. 11

*In re General Mills Glyphosate Litig.*,
  2017 U.S. Dist. LEXIS 108469 (D. Minn. July 12, 2017) ........................... 13, 15

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
  2022 U.S. Dist. LEXIS 189822 (E.D. Va. Oct. 17, 2022)............................ 20, 32

*Gold v. Lumber Liquidators, Inc.*,
  2015 U.S. Dist. LEXIS 165264 (N.D. Cal. Nov. 30, 2015) ............................. 18

*Golden Hill Paugussett Tribe of Indians v. Weicker*,
  39 F.3d 51 (2d Cir. 1994) ................................................................... 31

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) .......................................................... 25

*Hammerling v. Google LLC*,
  2022 U.S. Dist. LEXIS 126858 (N.D. Cal. July 18, 2022) ............................. 28

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) .................................................................... 9

*Hart v. Amazon.com, Inc.*,
  191 F. Supp. 3d 809 (N.D. Ill. 2016)........................................................ 17

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
  2020 U.S. Dist. LEXIS 185322 (N.D. Cal. Oct. 6, 2020) ............................ 14, 16

*Herrington v. Johnson & Johnson Consumer Cos.*,
  2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sep. 1, 2010)..................................... 3

*Hodsdon v. Mars, Inc.*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016).................................................... 29

*In re HSBC BANK USA, N.A.*,
  1 F. Supp. 3d 34 (E.D.N.Y. 2014).......................................................... 25

*Huertas v. Bayer U.S., LLC*,
  2022 U.S. Dist. LEXIS 148897 (D.N.J. Aug. 19, 2022) ................................. 22

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) .................................................. 10, 11, 15

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)............................................. 26

*Jessani v. Monini N. Am., Inc.*,
  744 F. App'x 18 (2d Cir. 2018) ............................................................. 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .............................................................. 16

*Kommer v. Bayer Consumer Health*,
  710 F. App'x 43 (2d Cir. 2018) ............................................................. 26

*Lacewell v. Off. of Comptroller of Currency*,
 999 F.3d 130 (2d Cir. 2021) .................................................24

*Lewis v. Casey*,
 518 U.S. 343 (1996) ...............................................................25

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*,
 2014 U.S. Dist. LEXIS 133540 (N.D. Cal. Sep. 22, 2014) .................24

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ........................................................ 19, 20, 24

*McCoy v. Nestle United States, Inc.*,
 173 F. Supp. 3d 954 (N.D. Cal. 2016)...................................29

*In Re Medtronic, Inc.*,
 623 F. 3d 1200 (8th Cir. 2010) ............................................28

*Napoli v. Deluxe Corp.*,
 2019 U.S. Dist. LEXIS 105165 (E.D.N.Y. June 21, 2019) .................33

*Nemphos v. Nestle Waters N. Am., Inc.*,
 775 F.3d 616 (4th Cir. 2015) ...............................................13

*In re Nexus 6P Prods. Liab. Litig.*,
 293 F. Supp. 3d 888 (N.D. Cal. 2018).................................30

*Nicosia v. Amazon.com, Inc.*,
 834 F.3d 220 (2d Cir. 2016) ................................................26

*Nieto v. Perdue Farms, Inc.*,
 2010 U.S. Dist. LEXIS 25256 (N.D. Ill. Mar. 17, 2010) ............. 17, 31

*Norcia v. Samsung Telecomms. Am., LLC*,
 2015 U.S. Dist. LEXIS 110454 (N.D. Cal. Aug. 20, 2015) ...............27

*Onaka v. Shiseido Ams. Corp.*,
 2023 U.S. Dist. LEXIS 53220 (S.D.N.Y. Mar. 27, 2023)............ 21, 22

*In re Packaged Seafood Prods. Antitrust Litig.*,
 242 F. Supp. 3d 1033 (S.D. Cal. 2017) ................................25

*Palmer v. Amazon.com, Inc.*,
 51 F.4th 491 (2d Cir. 2022) ................................................31

*Parks v. Ainsworth Pet Nutrition, LLC*,
 377 F. Supp. 3d 241 (S.D.N.Y. 2019).................................13

*Parks v. Dick's Sporting Goods, Inc.*,
 2006 U.S. Dist. LEXIS 39763 (W.D.N.Y. June 15, 2006).................24

*Pelayo v. Nestle USA, Inc.*,
 989 F. Supp. 2d 973 (C.D. Cal. 2013)................................ 11, 13

*Pels v. Keurig Dr. Pepper, Inc.*,
 2019 U.S. Dist. LEXIS 194909 (N.D. Cal. Nov. 7, 2019) .................21

*Perez v. Nidek Co.*,
711 F. 3d 1109 (9th Cir. 2013) ...........................................................................28

*Punian v. Gillette Co.*,
2015 U.S. Dist. LEXIS 111208 (N.D. Cal. Aug. 20, 2015) ...........................17, 18

*Puri v. Costco Wholesale Corp.*,
2021 U.S. Dist. LEXIS 242388 (N.D. Cal. Dec. 20, 2021)................................16

*Quynh Phan v. Sargento Foods, Inc.*,
2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2, 2021)..................................22

*Reinitz v. Kellogg Sales Co.*,
2022 U.S. Dist. LEXIS 98580 (C.D. Ill. June 2, 2022)......................................16

*Resnick v. Hyundai Motor Am. Inc.*,
2017 U.S. Dist. LEXIS 67525 (C.D. Cal. April 13, 2017)..................................18

*Richburg v. ConAgra Brands, Inc.*,
2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023)..................................13, 14

*Schertzer v. Bank of Am., N.A.*,
445 F. Supp. 3d 1058 (S.D. Cal. 2020) .............................................................24

*Schloegel v. Edgewell Pers. Care Co.*,
2022 U.S. Dist. LEXIS 46393 (W.D. Mo. Mar. 16, 2022)................................23

*Sneed v. Ferrero USA, Inc.*,
2023 U.S. Dist. LEXIS 25601 (N.D. Ill. Feb. 15, 2023)....................................10

*Snyder v. Tamko Bldg. Prods.*,
2019 U.S. Dist. LEXIS 169378 (E.D. Cal. Sep. 30, 2019).................................18

*Spiro v. Healthport Techs., LLC*,
73 F. Supp. 3d 259 (S.D.N.Y. 2014)..................................................................26

*Stewart v. Kodiak Cakes*,
LLC, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) .....................................................25

*Tietsworth v. Sears*,
720 F.Supp.2d 1123 (N.D. Cal. 2010)................................................................25

*Tomek v. Apple, Inc.*,
636 Fed. Appx. 712 (9th Cir. 2016) ...................................................................19

*Wach v. Prairie Farms Dairy, Inc.*,
2022 U.S. Dist. LEXIS 90233 (N.D. Ill. May 19, 2022)..................................9, 10

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) ...........................................................................20

*Wang v. Bethlehem Cent. Sch. Dist.*,
2022 U.S. Dist. LEXIS 140153 (N.D.N.Y. Aug. 8, 2022)..................................24

*Warth v. Seldin*,
422 U.S. 490 (1975)......................................................................................19, 20

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ........................................................... 17, 29

*Wright v. Publrs. Clearing House, Inc.*,
   439 F. Supp. 3d 102 (E.D.N.Y. 2020) ................................................. 9, 23

**State Cases**

*Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...........................................................................27

*Engalla v. Permanente Med. Group, Inc.*,
   15 Cal. 4th 951 (Cal. 1997) ...................................................................17

*Hill v. Roll International Corp.*,
   195 Cal. App. 4th 1295 (2011) ..............................................................10

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ........................................................... 10, 15

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326, 60 Cal. Rptr. 2d 539 (1997) ...............................29

**Federal Statutes**

21 U.S.C.S. § 321(i) ....................................................................................6

21 U.S.C. § 301 ........................................................................................27

21 U.S.C § 321(g) ......................................................................................6

**State Statutes**

815 ILCS § 505/1 .......................................................................................8

Cal. Bus. & Prof. Code § 17200 ..............................................................28

Cal. Bus. & Prof. Code § 17200 et seq. .....................................................7

Cal. Bus. & Prof. Code § 17500 .......................................................... 7, 27

Cal. Civ. Code § 1770 ................................................................................7

Cal. Civ. Code § 1770(9) .........................................................................16

Cal. Civ. Code § 1770(a) .........................................................................28

Cal. Health & Safety Code § 110100 .......................................................27

**Rules**

Fed. R. Civ. P. 9(b) ............................................ 1, 4, 16, 17, 18, 19, 31

Fed. R. Civ. P. 12(b)(1) ...................................... 1, 19, 24, 25, 26

Fed. R. Civ. P. 12(b)(6) ...................................................... 1, 9, 11

Fed. R. Civ. P. 12(f) ........................................................................................25

Fed. R. Civ. P. 23(c)(1) ....................................................................................25

Fed. R. Civ. P. 23(d)(1)(D) ...............................................................................25

**Regulations**

21 C.F.R. § 350.3 ...............................................................................................6

21 C.F.R. § 700.3 ...............................................................................................3

**Other Authorities**

*https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas* (last accessed
    May 5, 2023)........................................................................................7

*https://www.epa.gov/sdwa/questions-and-answers-drinking-water-health-
    advisories-pfoa-pfos-genx-chemicals-and-pfbs* (last accessed May 5, 2023) ...................7, 15

Defendants Tom's of Maine, Inc. ("Tom's") and Colgate-Palmolive Company[1] respectfully submit this Memorandum of Law in support of their motion to dismiss the Amended Class Action Complaint ("Amended Complaint" or "AC") pursuant to Rules 12(b)(6), 12(b)(1), and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This lawsuit arises from Plaintiffs' allegation that the word "natural" on the label of Tom's Wicked Fresh! Mouthwash (the "Product") is not true, based solely on an alleged test that found some unspecified amount of "PFAS" in the Product. Per- and Polyfluoroalkyl Substances ("PFAS") is an umbrella term for an expansive group of substances with one thing in common— a carbon molecule bonded to fluorine. Many substances under this PFAS umbrella have received considerable media attention due to the ubiquitous presence of PFAS in soil, groundwater, food, and in certain types of consumer products and/or packaging that use or intentionally add PFAS. Tom's does not contribute to the worldwide ubiquity of PFAS by intentionally adding it to the Product. Nor do Plaintiffs allege that Tom's does.

Instead, this lawsuit is based on Plaintiffs' allegation that they had one product tested— Tom's Wicked Fresh! Mouthwash—and that test showed the presence of PFAS. This purported "independent third-party testing" (the "Third-Party Test" or "Test") of the Product creates the shaky foundation on which all the allegations rest in Plaintiffs' Amended Complaint. AC at ¶65. In response to Plaintiffs' original complaint, Tom's filed a motion to dismiss arguing that Plaintiffs' failure to attach the Test or plead any facts about the Test's results, analytical method, process, or specific analytes rendered all of their claims too conclusory or speculative to withstand

---

[1] Since the only specific allegation of Colgate-Palmolive Company's involvement in this case is that "Tom's has been a majority-owned subsidiary of Colgate-Palmolive Co. since 2006" (AC at ¶23), Defendants' references in this Motion to Dismiss to "Tom's" should be considered, if and when necessary, to refer collectively to Tom's of Maine, Inc. and Colgate-Palmolive Company.

a motion to dismiss. ECF Nos. 22-24. In their Amended Complaint, Plaintiffs failed to cure this fatal flaw in any way. They did not attach the Test or plead any additional specifics about the Test. Nor did they make any changes to how they plead their causes of action. Instead, Plaintiffs made only three noteworthy changes to their complaint, each of which fails to save their pleading.

*First*, Plaintiffs changed their core allegation regarding the level of PFAS detected in the Product without any indication as to what led to the change. In their original complaint, Plaintiffs alleged that their "testing has revealed the Product contains PFOA in amounts more than 100 times the EPA's recommended levels." ECF 1 (original complaint) at ¶73. Plaintiffs counted on this allegation to support their claim regarding the presence of PFAS in the Product and persuade the Court that the level of PFAS was too high to ignore. In its original motion to dismiss, Tom's pointed out that the complaint was too vague to discern critical details regarding the test, including what the actual PFOA level in the Product was or what EPA "recommendation" Plaintiffs were referring to. Plaintiffs ignored all of these deficiencies and instead only decreased the level of PFOA alleged. Their pleading now alleges that "Plaintiffs' testing has revealed the Product contains PFOA in amounts <u>85 times the EPA's recommended levels</u>." AC at ¶73. This change raises even more questions about the reliability of Plaintiffs' claims regarding the Test and the actual results of the Test, on which Plaintiffs base this case.

*Second*, Plaintiffs added at least twelve new paragraphs alleging that the Product is a drug regulated by the FDA and subject to federal regulations regarding current Good Manufacturing Practice ("cGMP"). AC at ¶¶77-78, 81, 83-94. But the Product is a cosmetic, not a drug. As a result, most of the regulations cited by Plaintiffs are inapplicable, and Plaintiffs have tainted the Amended Complaint by framing their claims in an inapposite context. Plaintiffs cite no binding cGMP regulations applicable to cosmetic products, and indeed none are known to Tom's.

Accordingly, Tom's cannot have violated any cGMP requirements applicable to the Product, and Plaintiffs' allegations ring hollow. *See, e.g.*, AC at ¶107 (alleging that Defendants should have discovered the alleged presence of PFAS based on cGMPs); *id.* at ¶133 (alleging that Defendants would have identified the presence of PFAS if it had not "routinely disregarded" cGMPs).

*Third*, the Amended Complaint attempts to highlight the abundance of information on Tom's website in support of its claim that Tom's misleads consumers. *See, e.g.*, *id.* at ¶¶101-12. To the contrary, Tom's is transparent about the purpose, source, and processing it uses for each of the ingredients in its products. Since this is a case about Tom's use of the word "natural" on the Product, it is critical to note that Tom's provides consumers with an explanation of exactly what it means when it says "natural." *See id.* at ¶¶34-35 (referencing the explanation on Tom's website about "what the company means when it represents its products as 'natural'"). In particular, Tom's explains to consumers that when it uses the term "natural," it means, among other things, that the product's "ingredients are sourced and derived from nature." *Id.* at ¶37. Plaintiffs do not plausibly allege that any claim on Tom's website is factually untrue. To the extent Plaintiffs claim that PFAS should be disclosed as an "ingredient," that claim is inconsistent with FDA regulations and defies common sense. *See* 21 C.F.R. § 700.3 (defining "ingredient" in cosmetics); *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 U.S. Dist. LEXIS 90505, at *32 (N.D. Cal. Sep. 1, 2010) (distinguishing between "ingredients," which are "components in the manufacture of [the] products," and byproducts or "incidental ingredients," which need not be disclosed under the FDCA).

But even if we accept as true Plaintiffs' allegations that trace levels of "PFAS" were found in one test of the Product, the Amended Complaint still fails to state a claim. Each additional basis

for dismissal, which was already raised by Tom's in its original motion to dismiss, was virtually ignored by Plaintiffs in their Amended Complaint:

*Tom's marketing is not misleading.* Plaintiffs must plead that the allegedly deceptive marketing is likely to mislead a reasonable consumer acting reasonably under the circumstances. Here, Plaintiffs allege that Tom's use of "natural" on the Product label leads reasonable consumers to believe the Product would not contain unintentionally added PFAS. But the law is clear: reasonable consumers do not necessarily assume that products are free of unintentionally added chemical contaminants.

*Plaintiffs fail to adequately plead essential elements of their claims.* All of Plaintiffs' claims sound in fraud and are subject to Rule 9(b)'s heightened pleading standard. Not only do Plaintiffs fail to plead essential facts about the Test, but they also fail to plead sufficient facts about their individual purchases—an issue that was raised in Tom's original motion to dismiss and ignored by Plaintiffs in their Amended Complaint. The Amended Complaint lacks any particularity about Plaintiffs' purchases, including what advertisements or web pages Plaintiffs viewed. Moreover, even assuming that Tom's marketing statements were misleading in any way (which they are not), Plaintiffs are required to plead that Tom's knew about the alleged presence of PFAS in the Product and intended to mislead consumers. However, Plaintiffs plead only conclusory allegations that Tom's "should have known" about the presence of PFAS without pleading any facts to sustain their claim that Tom's knew about the purported PFAS issue and engaged in fraud by failing to disclose it.

*Plaintiffs lack standing on several issues.* Plaintiffs claim that they were injured by purchasing a product that contained PFAS. How do we know that they purchased a product that contained PFAS? The only answer they provide is the Test, but they plead no facts connecting the

Test to each Plaintiff's purchases. Given the dearth of allegations about the Test itself, Plaintiffs' claim is too conclusory and speculative to confer Article III standing. In addition, Plaintiffs also lack standing to assert claims on a nationwide basis or to seek injunctive relief.

*Plaintiffs' claims fail for various additional reasons under state law.* For instance, their FAL claim cannot survive based on an alleged omission; their UCL claims fail because they cannot plead any underlying unlawful, unfair, or fraudulent conduct; and they fail to plead any duty to disclose. Moreover, California does not recognize a claim for unjust enrichment, and, in any event, the unjust enrichment claim is based on the same conduct as the rest of their claims, which also fail as a matter of law.

*The Amended Complaint should be dismissed under the primary jurisdiction doctrine.* Congress recently enacted the Modernization of Cosmetics Regulation Act, which, among other things, directs the FDA to assess the use of PFAS in cosmetics. As a result, the issues raised in this action—which are squarely within the FDA's expertise—should be left to the FDA and not addressed by this Court, thus avoiding the real risk of inconsistent rulings on the presence of PFAS in cosmetics.

As set forth more fully below, Plaintiffs have failed to state any claim upon which relief may be granted. Because Plaintiffs have failed on their second attempt at pleading these claims, the Amended Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

Tom's makes safe and effective oral care products, including mouthwashes. The Product is one such mouthwash, which is designed to freshen breath with naturally sourced ingredients.

Contrary to Plaintiffs' allegations, the Product is a cosmetic and not a drug.[2] Plaintiffs' claims are based on representations of the Product as "natural." AC at ¶¶29, 30. They claim that Tom's use of the term "natural" is misleading because they tested the Product, and their test showed the presence of PFAS.

In fact, the Amended Complaint is based entirely on Plaintiffs' purported "independent third-party testing" of the Product. *Id.* at ¶65. Despite citing over twenty secondary sources to support their claims[3], Plaintiffs fail to attach or describe the Third-Party Test. Nor do Plaintiffs provide any detail about the Test, such as, which PFAS were analyzed and detected, the exact quantity of each PFAS chemical identified, any test results that found no or negligible levels of PFAS, the date of the Test, the number of units tested, the lot numbers of the Product tested, who purchased the Product that was tested, the identity of the "third-party" that conducted the Test, what type of test was done, or how the Test was conducted. *Id.* at ¶¶65-74. Plaintiffs only allege that the Test detected (unspecified) "material levels" or "concerning levels" of three PFAS in the Product and that the Test revealed one specific PFAS chemical, PFOA, "in amounts 85 times the EPA's recommended levels." *Id.* at ¶¶67, 73 (emphasis removed).

The Amended Complaint is too vague to discern what the level is for PFOA in the Product or what EPA advisory is referenced, or why such guidance is even relevant to the Product, as **the EPA has no enforceable limits for any PFAS and has no regulatory guidance applicable to**

---

[2] The Food, Drug, and Cosmetic Act defines a "cosmetic" as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance[.]" 21 U.S.C.S. § 321(i). A drug, in contrast, is defined in relevant part as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" or "articles (other than food) intended to affect the structure or any function of the body of man or other animals." *Id.* at 21 U.S.C ¶ 321(g). By way of example, deodorant is a cosmetic and an antiperspirant is a drug: deodorant neutralizes odor, while an antiperspirant "reduces the production of perspiration (sweat) at that site." 21 C.F.R. § 350.3. Here, the Product is a cosmetic: it does not treat any disease or affect the structure of any body part (the Product does not, for example, claim to treat gingivitis).

[3] *See* AC at footnotes 2, 3, 5, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 66, 67, 68, 69.

**potential exposures in consumer products**.[4] Plaintiffs provide no basis for the Court to infer that

lifetime advisory levels for *drinking water* is relevant to mouthwash, which is not swallowed[5] and

used much less frequently and in much lower quantities. Even if EPA's lifetime advisory levels

for drinking water were relevant to mouthwash, which they are not, the very EPA website Plaintiffs

rely on in the Amended Complaint explains that (1) the EPA's health advisory is "non-enforceable

and non-regulatory"; and (2) the "lifetime health advisory levels for PFOA exposure in drinking

water" are "*below the level of both detection (determining whether or not a substance is present)*

*and quantitation (the ability to reliably determine how much of a substance is present)*."[6] More

recently, EPA proposed a Maximum Contaminant Limit (MCL) for PFOA at 4 ppt (or 1,000 times

higher than the health advisory levels ("HAL") apparently referenced in the Amended

Complaint).[7] If Plaintiffs are claiming to have found PFOA at 85 times greater than the HAL,

Plaintiffs are also alleging they measured PFOA at levels below what EPA can reliably measure,

and perhaps more importantly, at levels under what EPA is now proposing to set as the MCL for

drinking water. For all of these reasons, the vague comparison to the EPA advisory is inapposite.

As a direct result of the Test, Plaintiffs bring seven causes of action: (1) violation of

California's False Advertising Law, Business & Professions Code § 17500 ("FAL"); (2) violation

of California's Unfair Competition Law, Business & Professions Code § 17200 et seq. ("UCL");

(3) violation of California's Consumer Legal Remedies Act, Civil Code § 1770 ("CLRA"); (4)

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1

---

[4] Perhaps a more germane regulatory guidance would come from the threshold set by California that recognizes and allows an acceptable amount (under 100 parts per million as measured in Total Organic Fluorine) of unintentionally added PFAS to food packaging. *See* CA AB-1200. This permissible threshold is multiple orders of magnitude greater than what Plaintiffs allege the Test revealed in one Tom's Product.

[5] The Product is not intended to be "consumed." Directions on the label state: "swish thoroughly for one minute and spit out. Not intended to be swallowed."

[6] *See* https://www.epa.gov/sdwa/questions-and-answers-drinking-water-health-advisories-pfoa-pfos-genx-chemicals-and-pfbs (last accessed May 5, 2023) (emphasis added) (cited at AC at ¶72 n. 40).

[7] https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed May 5, 2023).

et seq. ("ICFA"); (5) common law fraud; (6) constructive fraud; and (7) unjust enrichment.[8] The four statutory claims are brought on behalf of proposed state-specific subclasses, and the three common law claims are brought on behalf of a proposed nationwide class. AC at ¶186.

In their 60-page Amended Complaint, each Plaintiff alleges only four, virtually identical paragraphs of factual allegations in support of their claims. *Id.* at ¶¶142-61. Although the Amended Complaint is littered with allegations regarding the potential health effects of exposure to PFAS, Plaintiffs claim only economic injuries, not personal injuries. *Id.* at ¶¶144, 148, 152, 156, 160. Esquibel, Searle, and Wahl are residents of California, and Halim and Salerno are residents of Illinois, and they allege they each purchased the Product from a third-party retailer, and each used the Product. *Id.* at ¶¶142, 146, 150, 158. Plaintiffs claim that they believed the Product was a "natural" mouthwash free of chemicals such as PFAS, that they reasonably relied on the representations on the Product's label, and the representations were "part of the basis of the bargain in that they would not have purchased the Product, or would not have purchased it on the same terms, if they had known the truth." *Id.* at ¶¶143, 147, 151, 155, 159. Tom's pointed out in its original motion to dismiss that these allegations were insufficient and too conclusory to satisfy their pleading burden. Yet Plaintiffs failed to add a single fact to make their claims less speculative.

Thus, for the reasons set forth more fully below, Plaintiffs have failed to state a claim for relief and the Amended Complaint should be dismissed with prejudice.

## **ARGUMENT**

### I.     **The Amended Complaint Fails to State a Claim under Rule 12(b)(6)**

#### A.     **Legal Standard**

Under Rule 12(b)(6), a complaint must contain facts that sufficiently "state a claim to relief

---

[8] The sixth and seventh counts are misnumbered as Counts VII and VIII in the Amended Complaint.

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted). That is, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In the Second Circuit, courts considering a motion under Rule 12(b)(6) follow two key principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Wright v. Publrs. Clearing House, Inc.*, 439 F. Supp. 3d 102, 109 (E.D.N.Y. 2020) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## B.    Reasonable Consumers Would Not be Deceived by the Product's Labeling or Marketing

To state a claim under Illinois and California law, Plaintiffs must establish that the allegedly deceptive marketing is likely to mislead a reasonable consumer acting reasonably under the circumstances.[9] *See Freeman v. Time, Inc.*, 68 F. 3d 285, 289 (9th Cir. 1995) ("reasonable consumer" standard applies to UCL, FAL, and CLRA claims); *Wach v. Prairie Farms Dairy, Inc.*, 2022 U.S. Dist. LEXIS 90233, at *5 (N.D. Ill. May 19, 2022) ("Courts apply the 'reasonable consumer' standard to ICFA claims, meaning that plaintiffs must adequately allege that the Product's label was 'likely to deceive reasonable consumers.'" (citation omitted)); *Sneed v. Ferrero USA, Inc.*, 2023 U.S. Dist. LEXIS 25601, at *15 (N.D. Ill. Feb. 15, 2023) (dismissing

---

[9] Plaintiffs agree that their claims are governed by the "reasonable consumer" standard. *See e.g.*, AC at ¶¶32, 33, 34, 43, 103, 104, 112, 118, 120, 124, 135, 136, 171, 180, 184, 202, 218, 246, 254, 263.

fraud claim where plaintiff failed to plausibly allege how defendant's product label is likely to mislead a reasonable consumer); *Davidson v. Sprout Foods Inc.*, 2022 U.S. Dist. LEXIS 121893, at *12 (N.D. Cal. July 11, 2022) ("The CLRA, FAL, UCL 'fraudulent' prong, and common law fraud claims all require establishing that Defendant's practices would mislead a reasonable consumer."). Pursuant to the reasonable consumer standard, the alleged conduct must be capable of deceiving the reasonable consumer, not merely the "unwary consumer" or "least sophisticated consumer." *Hill v. Roll International Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

To that end, Plaintiffs must demonstrate that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 754 (N.D. Ill. 2015). This requires "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508. Courts routinely dismiss complaints at the pleading stage where the challenged statements are not misleading as a matter of law. *See Culver v. Unilever United States, Inc.*, 2021 U.S. Dist. LEXIS 133295, at *10 (C.D. Cal. June 14, 2021) ("[T]here has been an ever-increasing number of cases (even within the Ninth Circuit) in which a motion to dismiss was found to be appropriately granted where the issue was whether a product label is (or could be) deceptive or misleading to a reasonable consumer." (citing cases)), *appeal dismissed*, 2021 WL 6424469 (9th Cir. Dec. 29, 2021); *Wach,* 2022 U.S. Dist. LEXIS 90233, at

*5 (granting motion to dismiss and noting that "dismissal at the pleading stage may be appropriate if the statement at issue is not misleading as a matter of law").[10]

Recently, a court in this district dismissed a complaint based on similar allegations of a cosmetic allegedly containing PFAS and analyzed the myriad reasons why these claims fail as a matter of law. In *Brown v. COTY, Inc*, 2023 U.S. Dist. LEXIS 54316 (S.D.N.Y. Mar. 29, 2023), the plaintiff alleged that she bought CoverGirl mascara and that she determined through "independent, third-party laboratory testing" that several CoverGirl mascara products contained PFAS. *Id.* at *3. In addition to failing to allege "that the products she herself purchased contained PFAS such that she can allege an injury in fact," the court held that the plaintiff failed to "plausibly allege[] that reasonable consumers are likely to be misled" by the defendant's failure to disclose the presence of PFAS in the product. *Id.* at *14, *10. Among other deficiencies in the complaint, like the failure to plead sufficient facts about the presence of PFAS in the product she purchased such as "which PFAS were present . . . or at what levels," the court noted that the plaintiff did not allege that the "packaging represented the product to be PFAS-free" nor did she "identify any basis on which she or another reasonable consumer might assume that [the product] does not contain PFAS." *Id.* at *12-13. Moreover, the court rejected the plaintiff's suggestion that PFAS should be

---

[10] *See also Ibarrola*, 83 F. Supp. 3d at 756; *Pelayo v. Nestle USA, Inc.,* 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (expressly rejecting plaintiffs' argument that "whether a reasonable consumer is likely to be misled by a labeling claim" is an issue of fact inappropriate for decision on a motion to dismiss and explaining "it is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 201 (2d Cir. 2019) ("Because Plaintiffs have failed plausibly to allege a misleading statement, each of their proposed causes-of-action lacks a necessary element" and "[d]ismissal was therefore proper" under Rule 12(b)(6)).

listed as an ingredient and also held that the plaintiff failed to plead any theory as to how PFAS made their way into the product with a sufficient "level of specificity." *Id.*[11]

Here, Plaintiffs contend that Tom's engaged in fraudulent conduct in marketing the Product as a "natural" mouthwash that is made by the "#1 Natural Mouthwash Brand" (AC at ¶4), and point to generic statements on Tom's website that Tom's aims to make "safe" and "effective" products that are "good for you and good for the planet!" (*id.* at ¶¶7, 36-37, 40). Plaintiffs allege that these statements are deceptive, misleading, and/or untrue because they represent that the Product "would not contain artificial, man-made PFAS chemicals." *Id.* at ¶125. Plaintiffs' assumptions about the reasonable consumer and their interpretation of the term "natural" are unsupported by the law.

First, Plaintiffs allege that a reasonable consumer understands "natural" to mean that the Product is free from artificial or unnatural *ingredients*, and by failing to disclose the alleged presence of some unspecified amount of PFAS in the Product's ingredient list, Tom's has engaged in deceptive and fraudulent practices. However, this theory of deception—that reasonable consumers interpret the word "natural" to mean a product that is completely free of any trace of synthetic or man-made chemicals—has been rejected by the weight of authority from federal courts in a comparable line of cases involving the presence of trace amounts of PFAS or other synthetic chemicals in food products. *See, e.g.*, *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom.*, *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ("we agree with the district court that the presence of glyphosate as a contaminant in

---

[11] The court in *Brown* also held that general statements on the defendant's website that were untethered to any particular product were "aspirational company mission statements" and therefore constituted "nonactionable puffery." *Id.* at *10-11. The same is true here. All of the general statements about Tom's general mission and philosophy are similarly aspirational statements that cannot be objectively measured. *See* AC ¶108 (statements like "Thoughtfully Blended…" "We work very hard…", and "We strive for transparency and quality in ingredients" cannot be proven true or false and are therefore nonactionable puffery). Accordingly, all such statements cannot support Plaintiffs' claims.

Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name 'Florida's Natural,' would not make assumptions regarding the presence or absence of trace amounts of glyphosate"); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) ("a reasonable consumer would not interpret the label 'natural' as warranting that the [p]roducts contain no amount of glyphosate"); *In re General Mills Glyphosate Litig.*, 2017 U.S. Dist. LEXIS 108469, at *17 (D. Minn. July 12, 2017) (holding that it is implausible to allege that "Made with 100% Natural Whole Grain Oats" means that there is no trace of synthetic ingredient "or that a reasonable consumer would so interpret the label"); *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616 (4th Cir. 2015) (affirming dismissal of complaint based on, among other things, allegation that infant formula and baby food products contain some amount of fluoride); *Pelayo*, 989 F.Supp.2d at 978 (dismissing complaint with prejudice, where plaintiffs alleged that "All Natural" labeling on defendants' pastas is false, misleading, and reasonably likely to deceive the public because the products contain at least two ingredients that are unnatural, artificial, or synthetic, finding that plaintiff fails to offer an objective or plausible definition of the phrase "All Natural," and the use of the term "All Natural" is not deceptive in context).

Richburg v. ConAgra Brands, Inc.*, 2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023), is instructive. There, the court dismissed consumer fraud claims under California and Illinois law based on allegations that the defendant falsely and misleadingly marketed and labeled its microwave popcorn products as "free of unnatural or artificial ingredients," containing "only real ingredients" and "100% ingredients from natural sources," when the products allegedly contain PFAS, on grounds that "plaintiffs have not plausibly alleged that reasonable consumers would be deceived by defendant's representations or omissions on the [challenged products]." *Id.* The court

explained that the products were advertised as containing natural ingredients and that reasonable consumers would not consider "such undisputedly artificial, migratory chemicals to be an 'ingredient.'" *Id.* at *20-23.[12] The same is true here. Plaintiffs do not dispute that the Products' listed *ingredients* are natural. As *Richburg* held, reasonable consumers would not consider a "migratory" chemical like PFAS to be an ingredient that has to be disclosed on the packaging, and a product's advertising will be correct as a matter of law when it contains natural ingredients, even though it is alleged to contain a "migratory" chemical like PFAS. *See id.*

In fact, the Second Circuit has expressly rejected the interpretation of "natural" that Plaintiffs try to advance here, holding that the term "natural" *does not* "indicate[] the absolute absence of contaminants." *Axon*, 813 Fed Appx. at 706 (contrasting "natural" to the terms "pure" and "100% natural"). Courts around the country have taken a similar stance. *See, e.g.*, *Richburg*, 2023 U.S. Dist. LEXIS 21137; *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 U.S. Dist. LEXIS 185322, at *3 (N.D. Cal. Oct. 6, 2020) (dismissing consumer fraud claims, finding that defendant's sale of apple juice and apple sauce products representing "natural" and "all natural ingredients" were not misleading despite the presence of acetamiprid, a "synthetic and unnatural chemical").

Here, as in *Hawyuan Yu*, *Parks*, *Axon*, *Richburg*, and *General Mills*, a reasonable consumer would not be deceived by the use of the word "natural" to describe the Product. Even assuming the truth of Plaintiffs' allegations concerning their subjective belief about the word "natural" in the Product's labeling for purposes of this motion, a reasonable consumer, viewing the Product's

---

[12] In *Richburg*—a lawsuit filed by the same law firm representing Plaintiffs here—the defendant did not dispute that PFAS were added to the microwave popcorn bags. The *Richburg* court nevertheless dismissed the complaint. Here, even assuming as true for purposes of this motion that there was an independent test of the Product that showed some level of PFAS in some unknown sample, Plaintiffs do not plausibly allege—and Tom's vigorously denies—that any PFAS were intentionally added to the Product or that Tom's had any knowledge of the presence of PFAS in the Product.

labeling, would not make assumptions regarding the presence or absence of chemicals like PFAS in the Product. This is especially true where, as here, (1) PFAS is not added intentionally[13] and (2) the chemical is known to be pervasive in the environment.[14] Thus, Plaintiffs do not and cannot plausibly allege facts showing that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508; *Ibarrola*, 83 F.Supp.3d at 754.

Plaintiffs' attempt to support their allegation that a reasonable consumer would share in their unreasonable subjective beliefs by citing to market research or consumer surveys (AC at ¶¶113-23) fails. The Ninth Circuit Court of Appeals in *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019), made clear that a survey cannot, on its own, salvage a plaintiff's claim when the complaint does not otherwise plead facts establishing deception. In *Becerra*, plaintiff cited the results of a 2018 survey of California and national soft-drink consumers, which she contended was proof that the majority of soft-drink consumers believe "diet" soft drinks will help them lose or maintain their weight. The district court concluded, and the Ninth Circuit affirmed, that "no reasonable consumer would believe that the word 'diet' in a soft drink's brand name promises weight loss or healthy weight management." *Id.* at 1228. Here, Plaintiffs reference market research, which they contend is proof that consumers would be willing to change personal

---

[13] Plaintiffs do not allege that Tom's knowingly or intentionally added PFAS to the Product, they only allege a Test showing some unspecified amount of PFAS in the Product. AC at ¶46. The fact that PFAS is not intentionally added to the product as an undisclosed ingredient distinguishes it from other cases where defendants are "accused of introducing unnatural *ingredients* into a product labeled 'natural.'" *Axon*, 354 F. Supp. 3d at 183 ("It is far more misleading to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process.").

[14] *See, e.g.*, *PFAS Explained*, EPA, https://www.epa.gov/pfas/pfas-explained (last visited March 9, 2023) (cited in AC at n. 17) (explaining that "[b]ecause of their widespread use and their persistence in the environment, many PFAS are found in the blood of people and animals all over the world and are present at low levels in a variety of food products and in the environment" and that "PFAS are found in water, air, fish, and soil at locations across the nation and the globe"); *see also In re General Mills*, 2017 U.S. Dist. LEXIS 108469, at *17 ("It would be nearly impossible to produce a processed food with no trace of any synthetic molecule.").

hygiene products if the new product was more eco-friendly and that consumers are willing to pay more for a natural product. AC at ¶¶113-23. As a threshold matter, this purported research does not involve any Tom's products, nor does it reference PFAS. Even if it had, it cannot prove an element of Plaintiffs' claims. *See e.g.*, *Hawyuan Yu*, 2020 U.S. Dist. LEXIS 185322, at *19 (consumer surveys did not support plaintiff's claims, and were "tangentially related to Plaintiff's claims, at best"); *Puri v. Costco Wholesale Corp.*, 2021 U.S. Dist. LEXIS 242388, at *21 (N.D. Cal. Dec. 20, 2021) (survey showing that "more than two-thirds" of "over four hundred" consumers who viewed a label "expected the Product would contain chocolate and not chocolate substitutes" did not support plaintiff's primary assertion that "to be properly considered 'chocolate,' a product must be made chiefly from cacao beans"). In short, Plaintiffs fail to allege any actionable misrepresentation by Tom's which would deceive a reasonable consumer.

## II.      Plaintiffs Do Not Satisfy Their Pleading Burdens

### A.      Plaintiffs' Claims Do Not Comply With Rule 9(b)

Under California and Illinois law, Plaintiffs are required to plead their consumer protection and fraud claims with particularity under Rule 9(b). *See* Cal. Civ. Code § 1770(9); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to CLRA and UCL claims); *In re Arris Cable Modem Consumer Litig.*, 2018 U.S. Dist. LEXIS 1817, at *29 (N.D. Cal. Jan. 4, 2018) (Rule 9(b) applies to UCL, FAL, and CLRA claims); *Reinitz v. Kellogg Sales Co.*, 2022 U.S. Dist. LEXIS 98580, at *4-5 (C.D. Ill. June 2, 2022) ("Fraud claims, including those brought under the ICFA, must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)."). "It is well settled that claims sounding in fraud must allege at minimum all essential facts that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *Dicicco v. PVH Corp.*, 2020 U.S. Dist. LEXIS 160465, at *6-7 (S.D.N.Y. Sept. 2, 2020) (internal quotation marks and citations omitted)). The

Amended Complaint is devoid of the "essential facts" in this case. The factual predicate for Plaintiffs' entire Amended Complaint is the Test, yet Plaintiffs provide virtually no facts about the Test. Plaintiffs provide no facts to support their claim that they each purchased a product actually containing PFAS. Moreover, Plaintiffs plead only four unadorned paragraphs about their individual purchases. AC at ¶¶142-61. Plaintiffs do not plead with any particularity what advertisements, marketing, or labeling they saw and relied on. They do not identify what web pages they viewed, or if they saw Tom's website at all before their purchases. Accordingly, Plaintiffs fall woefully short of meeting the heightened pleading standard of Rule 9(b). *See, e.g.*, *Nieto v. Perdue Farms, Inc.*, 2010 U.S. Dist. LEXIS 25256, at *10-11 (N.D. Ill. Mar. 17, 2010) (claims inadequately pled under Rule 9(b) because "[t]ellingly, [plaintiff] does not disclose any factual findings from her attorney's investigation that would support her allegations" and that the "conclusory assertions are not enough to put [the defendant] on notice of the specific allegations to which it must respond").

### B.   Plaintiffs Fail to Plausibly Allege that Tom's Had Knowledge of PFAS in the Product

To successfully plead their claims, Plaintiffs must allege that Tom's knew about the alleged presence of PFAS in the Product when Plaintiffs purchased it. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145–47 (9th Cir. 2012) (dismissing CLRA and UCL claims because the complaint failed to support an inference that the defendant was aware of the alleged defect at time of plaintiffs' purchase); *Punian v. Gillette Co.*, 2015 U.S. Dist. LEXIS 111208, at *33 (N.D. Cal. Aug. 20, 2015) (dismissing UCL, CLRA, and FAL claims because plaintiff failed to sufficiently allege defendants' knowledge of any product defect); *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (Cal. 1997) (knowledge is an element of common law fraud claim); *Hart v.*

*Amazon.com, Inc.*, 191 F. Supp. 3d 809, 822-23 (N.D. Ill. 2016) (holding that ICFA claim fails where plaintiff fails to allege that defendant "knew that its statement was false").

Knowledge must be pled with more than conclusory allegations. *Gold v. Lumber Liquidators, Inc*., 2015 U.S. Dist. LEXIS 165264, at *23 (N.D. Cal. Nov. 30, 2015). Similarly, Plaintiffs may not merely allege that Tom's "should have known" that the Product contained PFAS. AC at ¶244; *Resnick v. Hyundai Motor Am. Inc.*, 2017 U.S. Dist. LEXIS 67525, at *40 (C.D. Cal. April 13, 2017) (rejecting plaintiff's argument that one need not plead actual knowledge, explaining that the Ninth Circuit "clearly states that knowledge is required to prove a claim based on a failure to disclose a defect." (citing *Wilson*, 668 F.3d at 1145)); *Gold*, 2015 U.S. Dist. LEXIS 165264, at *24-25 ("Plaintiffs have not 'plausibly' pleaded that Lumber Liquidators was on notice of any defect at the time Plaintiffs purchased their flooring."). Accordingly, Plaintiffs' failure to allege how and when Tom's allegedly knew about PFAS in the Product is fatal to their claims. *See, e.g.*, *Resnick*, 2017 U.S. Dist. LEXIS 67525, at *43-44 (finding plaintiffs did not adequately allege knowledge when they failed to plead facts indicating defendant was aware of particular complaints or monitored particular websites); *Snyder v. Tamko Bldg. Prods.*, 2019 U.S. Dist. LEXIS 169378, at *31-32 (E.D. Cal. Sep. 30, 2019) (finding allegations of knowledge based on warranty claim submissions and online consumer complaints are "the type of conclusory allegations that are not sufficient to support the conclusion that Defendant obtained actual knowledge of the specific defect, nor do they come close to establishing that Defendant knew of the defect *prior to* Plaintiff's purchase" to satisfy Rule 9(b)'s requirements for claims under the UCL, FAL, and CLRA); *Punian*, 2015 U.S. Dist. LEXIS 111208, at *33 (dismissing UCL, CLRA, and FAL claims because plaintiff failed to sufficiently allege defendants' knowledge of any product defect or that any allegedly false or misleading statements were false or misleading

when made); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014) ("*Camasta*'s sparse allegations fail to satisfy the particularity requirement of Rule 9(b)."). Here, Plaintiffs do not even attempt to cite to any fact supporting knowledge.

Similarly, Plaintiffs have not sufficiently pled fraudulent intent. Rather, Plaintiffs allege in conclusory fashion that "Defendants' knowingly false and misleading representations have the intended result of convincing reasonable consumers that its Product is without artificial, unnatural, or otherwise synthetic ingredients." AC at ¶135. However, a "defendant's knowledge about its product alone is not enough to suggest fraudulent intent." *Christia v. Trader Joe's Co.*, 2022 U.S. Dist. LEXIS 222194, at *20 (N.D. Ill. Dec. 9, 2022) (rejecting Plaintiffs' argument that "defendant had actual and constructive knowledge of its falsity and deception, and its 'fraudulent intent is evidenced by its knowledge that the Product was not consistent with its representations,'" and finding that "plaintiff summarily alleges fraudulent intent"); *Tomek v. Apple, Inc.*, 636 Fed. Appx. 712, 713-14 (9th Cir. 2016).

## III.   Plaintiffs Lack Standing to Sustain Their Claims

### A.   Plaintiffs' Conclusory Allegations of Injury Fail to Confer Article III Standing

The Court should dismiss this lawsuit in its entirety under Rule 12(b)(1) because Plaintiffs do not satisfy the requirements of Article III standing, the "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish Article III standing, a plaintiff has the burden to show: (1) an injury-in-fact; (2) that the injury is traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff fails to allege standing when he relies on "threadbare assertions [that] are conclusory and do not raise a reasonable inference of injury." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022).

To establish an injury in fact, a plaintiff must suffer an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502; *Lujan*, 504 U.S. at 560 n.1 (for a plaintiff's alleged harm to be "particularized," it "must affect [him] in a personal and individual way"). The alleged harm must be "concrete," meaning the Court "need not credit [a complaint's] conclusory statements without reference to its factual context." *Amidax Trading Group v. S.W.LF.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) (internal quotation marks and citation omitted). And, the injury must be "actual or imminent," which means plaintiffs must allege an injury that is non-speculative—allegations of harm that are merely "conjectural or hypothetical" will not suffice. *Lujan*, 504 U.S. at 560 (internal quotation marks omitted); *see also In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 U.S. Dist. LEXIS 189822, at *29-30 (E.D. Va. Oct. 17, 2022) (dismissing entire complaint alleging purely economic injury due to the risk of potential future harm from the presence of or risk of heavy metals in baby food, holding that there is no "actual or imminent injury alleged" where plaintiffs' claims rely on a threat of future physical harm from the product).

A plaintiff does not adequately plead an injury when they allege that some products contain an offending substance, but the plaintiff is unable to plausibly allege that they personally purchased an implicated product. *See e.g.*, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030-31 (8th Cir. 2014) (purchasers of "100% kosher" hot dogs lacked standing because although some products were tainted with non-kosher meat, it was "pure speculation to say the particular packages sold to the [plaintiffs] were tainted by non-kosher beef and "it [wa]s quite plausible [defendant] sold the [plaintiffs] exactly what was promised") (emphasis omitted); *Gaminde v. Lang Pharma Nutrition,*

*Inc.*, 2019 U.S. Dist. LEXIS 48595, at *6 (N.D.N.Y. 2019) ("[I]t is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well.").[15]

Allegations of third-party testing, alone, are not sufficient, and many courts have dismissed similar claims for lack of standing. Recently, a court in this district dismissed a similar action alleging that a cosmetic product was misrepresented as "natural" when it allegedly contains PFAS, which were detected in the plaintiffs' "independent" test. *Onaka v. Shiseido Ams. Corp.*, No. 21-cv-10665-PAC, 2023 U.S. Dist. LEXIS 53220, at *12 (S.D.N.Y. Mar. 27, 2023). In *Onaka*, which was brought by the same firm that represents Plaintiffs here, the court held that "Plaintiffs' single allegation of independent testing is inadequate" to make it "at least plausible that one [plaintiff] purchased a Product that was misbranded, i.e., that contained PFAS." *Id.* The court relied on the fact that the plaintiffs failed to allege that their own purchases were tested for PFAS, which Plaintiffs similarly fail to allege here. *See id.* at *12-13 (explaining that the plaintiffs only allege that they "tested the same kind of Products from the same line of Products that they themselves had purchased, not that they tested their own purchases"). Since the plaintiffs failed to even plead *when* they tested the products in relation to when they made their purchases, their claims "make[] it nothing more than a 'sheer possibility' that Plaintiffs' purchases likewise contained PFAS." *Id.* at *13 (quoting *Iqbal*, 556 U.S. at 678). Like Plaintiffs here, the plaintiffs in *Onaka* "provide[d]

---

[15] *See also Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) (affirming dismissal when plaintiffs asserted "threadbare assertions [that] are conclusory and do not raise a reasonable inference of injury"); *Doss v. General Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020) (plaintiff lacked standing to pursue claims relating to glyphosate in Cheerios because she "has not alleged that she purchased *any* boxes of Cheerios that contained any glyphosate"); *Pels v. Keurig Dr. Pepper, Inc.*, 2019 U.S. Dist. LEXIS 194909, at *10-11 (N.D. Cal. Nov. 7, 2019) ("[P]laintiff has failed to plead a particularized injury" by "fail[ing] to plead the water *he* purchased contained violative arsenic levels."); *Fahey v. Deoleo USA, Inc.*, 2018 U.S. Dist. LEXIS 190934, at *4 (D.D.C. Nov. 8, 2018) (granting motion to dismiss where plaintiff "marshals but one 'fact' to substantiate his claim that this defendant deceptively mislabeled the bottle of extra virgin olive Fahey purchased in 2018: the results of a 2010 study on olive oil quality by the University of California, Davis. This meager 'factual content' is not enough for the court to draw the reasonable inference that Deoleo is liable for the misconduct alleged" (internal quotation marks and citation omitted)).

no facts from which the Court could extrapolate that their isolated testing should apply broadly to Defendant's Products, regardless of when they were purchased." *Id.* Like the Amended Complaint, the plaintiffs in *Onaka* cited numerous "studies, articles, and blog posts that indicate a generalized presence of PFAS in cosmetics," but the court found that the plaintiffs failed to plead sufficient facts making it plausible that they actually purchased a misbranded product. *Id.* at *13-18.

In *Bodle v. Johnson & Johnson Consumer*, No. 3:21-cv-07742-EMC (N.D. Cal. Feb. 24, 2022) (ECF No. 28), the court dismissed because plaintiffs failed to plausibly allege that they bought a contaminated product, even though the third-party test identified up to 23 batches made by the defendant that contained a chemical contaminant. *Id.* at 2.[16] The court noted that neither the complaint nor the test results "contend that any identified product or brand *systematically* used [the chemical] nor that any identified product-line was *designed* to incorporate [the chemical]." *Id.* (emphasis in original).[17] The court reached a similar conclusion in *Bowen v. Energizer Holdings, Inc.*, 2022 U.S. Dist. LEXIS 235416, at *10 (C.D. Cal. Aug. 29, 2022), finding that "Plaintiff's claim is based on the *hypothetical* possibility that the products she purchased *may* have contained [a contaminant] — not that she purchased a product that demonstrably did contain [the contaminant], such as from a batch identified by [the third-party lab]." (emphasis in original). And in *Huertas v. Bayer U.S., LLC*, 2022 U.S. Dist. LEXIS 148897, at *13 (D.N.J. Aug. 19, 2022), the court dismissed because plaintiffs could not allege the specific level of the chemical in their products, and "[p]laintiffs have not presented a particularized account of the actual harm caused,

---

[16] A copy of the court's decision is provided as Exhibit A to the May 5, 2023 Declaration of Jaclyn DeMais.

[17] *See also Quynh Phan v. Sargento Foods, Inc.*, 2021 U.S. Dist. LEXIS 103629, at *13 (N.D. Cal. June 2, 2021) (holding that plaintiff's claims are "not saved by any implication that there is a systemic problem with Sargento's Products, from which one could infer that the Product Plaintiff purchased was also tainted. Plaintiff has alleged that antibiotics were detected in one Product (different from the one Plaintiff purchased) based on one test, but this allegation by itself is insufficient to show that all or most Products contain antibiotics. There is no indication that the single test of a single product is likely representative of other Sargento Products and, if so, why.").

and instead present mere conjecture in asserting that they experienced some sort of loss due to the product's generally asserted 'worthless[ness],' and that some hypothetical, future physical harm may befall them from use of the product." *See also Schloegel v. Edgewell Pers. Care Co.*, 2022 U.S. Dist. LEXIS 46393, at *2, *5-6 (W.D. Mo. Mar. 16, 2022) (holding that the plaintiff failed to adequately "allege that the specific product she purchased was adulterated").

Here, Plaintiffs rely only on the impermissibly conclusory allegation that the Product they purchased contained PFAS. AC at ¶¶142, 146, 150, 158. Plaintiffs claim that they were injured because they would not have purchased the Product had they known it contained PFAS. *See, e.g.*, *id.* at ¶¶143, 147, 151, 159. The sole factual basis for their claim that they each actually purchased a product containing PFAS, and were therefore injured, is the Third-Party Test. *Id.* at ¶65. But Plaintiffs plead no facts about the Test that would allow the Court to draw any reasonable inferences connecting the Test to their purchases, much less their alleged injuries. Plaintiffs' pleading about the Test is not even consistent between the original complaint and the Amended Complaint. Plaintiffs' failure to provide such details—let alone attach the test results themselves— is instructive. It highlights everything we do not know about Plaintiffs' claims, such as how many units were tested, whether each Plaintiff purchased a unit that tested positively for PFAS, whether any unit actually purchased by a Plaintiff was tested, whether elevated or negligible levels of PFAS were found in positive tests, whether there were any negative tests, when the Test was conducted in relation to Plaintiffs' purchases, and so on. Thus, even assuming the allegations in the Amended Complaint are true and that Plaintiffs did conduct a test that showed the presence of PFAS, Plaintiffs never connect their purchases to the Test or otherwise allege in a non-conclusory, non-speculative way that the Products they purchased contained PFAS. *See, e.g.*, *Wright v. Publrs.*

*Clearing House, Inc.*, 439 F. Supp. 3d 102, 112 (E.D.N.Y. 2020) ("the allegations regarding the connection to the Plaintiffs' purported injuries remain inadequate").

As a result, the Amended Complaint fails to plausibly allege that Plaintiffs purchased products that contained PFAS and were therefore injured. *See Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 147 (2d Cir. 2021) (holding plaintiff lacked Article III standing because its "alleged [] loss will remain purely 'conjectural or hypothetical,' rather than 'imminent' as the Constitution requires") (citing *Lujan*, 504 U.S. at 560). As such, the Amended Complaint should be dismissed under Rule 12(b)(1) because Plaintiffs lack Article III standing.

### B.    Plaintiffs Lack Standing to Bring Claims on a Nationwide Basis

Plaintiffs, who assert claims under two different states' laws, do not have standing to bring claims on a nationwide basis or under the law of other states.[18] "'[S]tanding is not dispensed in gross, and, accordingly, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Wang v. Bethlehem Cent. Sch. Dist.*, 2022 U.S. Dist. LEXIS 140153, at *12 (N.D.N.Y. Aug. 8, 2022) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). "If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim." *Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*, 2014 U.S. Dist. LEXIS 133540, at *14 (N.D. Cal. Sep. 22, 2014) (internal quotation marks and citation omitted). "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong

---

[18] The question of standing is appropriately addressed at the pleading stage. *See, e.g., In re Direxion ETF Tr.*, 279 F.R.D. 221, 230 (S.D.N.Y. 2012) ("[A] court must address the 'threshold question' of Article III standing before it ever reaches the question of class certification."); *Parks v. Dick's Sporting Goods, Inc.*, 2006 U.S. Dist. LEXIS 39763, at *8 (W.D.N.Y. June 15, 2006) (rejecting argument that standing should not be considered until class certification stage); *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072, 1072 n.3 (S.D. Cal. 2020) (providing examples and finding that there is a "growing trend" among California district courts to address standing at the pleadings stage and dismiss claims "under the laws of states in which no plaintiff resides or has purchased products").

and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and citation omitted).

Here, Plaintiffs' common law claims on behalf of a putative Nationwide Class are subject to dismissal under Rule 12(b)(1) because Plaintiffs only have standing to bring a common law claim in the states in which they reside or purchased the Products[19]—California and Illinois. *See In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state."); *Corcoran v. CVS Health Corp.*, 2016 U.S. Dist. LEXIS 99797, at *7-8 (N.D. Cal. July 29, 2016) (collecting cases). Plaintiffs cannot represent unnamed plaintiffs from states other than Illinois and California; therefore, they cannot maintain any claim on a nationwide basis. *See Stewart v. Kodiak Cakes*, LLC, 537 F. Supp. 3d 1103, 1125 (S.D. Cal. 2021) (finding plaintiffs lack standing to bring claim for quasi-contract/unjust enrichment "under the laws of the states where they do not reside or did not purchase the at-issue products"); *In re HSBC BANK USA, N.A.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) (finding that "Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state"). Thus, Plaintiffs' claims on behalf of the Nationwide Class should be dismissed under Rule 12(b)(1).[20]

---

[19] *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) ("In analyzing putative, nationwide, consumer-protection class actions, several courts have determined that the law of the state where each plaintiff resides and purchased the relevant products should apply.").

[20] In the alternative, the Court can strike the Nationwide Class claim. Under Rule 12(f), the Court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 23(c)(1) directs district courts to determine "as soon as practicable" whether the proposed class satisfies the class certification requirements, and Rule 23(d)(1)(D) authorizes the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(c)(1), 23(d)(1)(D); *Davito v. Amtrust Bank*, 743 F.Supp.2d 114, 115 (E.D.N.Y. 2010) (granting motion to strike class allegations); *Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010) (holding that "this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained"). Here, Plaintiffs cannot represent consumers on claims that they themselves do not have standing to assert, and the Nationwide Class cannot meet the requirements of typicality or predominance, due to differences between state law, among other issues.

C.      **Plaintiffs Lack Standing to Seek Injunctive Relief**

Plaintiffs' claims for injunctive relief should be dismissed for lack of standing under Rule

12(b)(1). To establish standing, a plaintiff must adequately plead a "real or immediate threat" of

injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *City of Los Angeles*

*v. Lyons*, 461 U.S. 95, 111-12 (1983)). If a consumer will not purchase a product again, he lacks

standing to seek injunctive relief. *See Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44

(2d Cir. 2018) (summary order); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *4

(S.D.N.Y. Jan. 23, 2018) (holding that plaintiff's claim that she would not have purchased the

product "but for" the alleged misrepresentation "is effectively a concession that she does not intend

to purchase the product in the future").[21] Here, Plaintiffs allege that, although they desire to

purchase the Product, they will not purchase it in the future as long as "Defendants may freely

advertise the Product as 'natural.'" *See, e.g.*, AC at ¶145, 149, 153, 157, 161. Accordingly,

Plaintiffs fail to plausibly allege that they will purchase the Product in the future and therefore lack

standing to seek injunctive relief. *See, e.g.*, *DaCorta*, 2018 WL 557909, at *4 (holding that

plaintiff's claim that she would not have purchased the product "but for" the alleged

misrepresentation "is effectively a concession that she does not intend to purchase the product in

the future").

---

[21] *See also Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (dismissing claims for injunctive relief where plaintiff alleges that he will not purchase the product again in its allegedly misleading packaging); *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 270-71 (S.D.N.Y. 2014) (noting that past exposure to illegal conduct cannot sustain a plausible inference that the plaintiff is "in danger of being wronged again").

**IV.** **Plaintiffs' Claims Are Subject to Dismissal for Additional Independent Reasons**

    **A.** **Plaintiffs' FAL Claims (Count I) Fail to the Extent They Are Based on Omissions**

The FAL states that it is "unlawful for any person, firm, corporation or association, or any employee thereof…to make or disseminate or cause to be made or disseminated…any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Notably, the FAL explicitly prohibits only the making, disseminating, or causing the dissemination of false or misleading statements. *Id.* "[A]n omission, even of material facts, does not violate the FAL." *See Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 668 (N.D. Cal. 2016); *see also Norcia v. Samsung Telecomms. Am., LLC*, 2015 U.S. Dist. LEXIS 110454, at *24 (N.D. Cal. Aug. 20, 2015) ("[t]here can be no FAL claim where there is no 'statement' at all"). Plaintiffs assert that Tom's violated the FAL by *failing to disclose* that the Product contained PFAS. AC at ¶201. As such, Plaintiffs fail to state a claim for violation of the FAL and Count I of the Amended Complaint should be dismissed.

    **B.** **Plaintiffs' UCL Claims Fail**

Because it is "written in the disjunctive," the UCL prohibits three types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, or (3) fraudulent acts or practices. *Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiffs allege that Tom's acts are unlawful under the UCL because they violate the FAL, CLRA, the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §301 *et seq.* ("FDCA") and the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §110100 *et seq.* ("Sherman Law"). AC at ¶214. To the extent this claim is based on the same conduct underlying Plaintiffs'

statutory claims, all of which fail,[22] the unlawful UCL claim is also subject to dismissal. *Davis v. HSBC Bank*, 691 F. 3d 1152, 1168 (9th Cir. 2012); *Hammerling v. Google LLC*, 2022 U.S. Dist. LEXIS 126858, at \*43 (N.D. Cal. July 18, 2022) ("If the predicate claims fail, the UCL claim also fails"). And, "when plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs . . . do not survive." *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021). Plaintiffs cannot maintain a cause of action under any of the three UCL prongs.

### C.    Plaintiffs' Remaining California Claims (Count II and Count III) Fail as They Rely on an Absent Duty to Disclose

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," Cal. Bus. & Prof. Code § 17200, and the CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Plaintiffs claim that Tom's violated the UCL

---

[22] Plaintiffs allege that Tom's violated the FDCA and Sherman Law because "the mere presence of PFAS renders the Product both adulterated and misbranded under the FDCA." AC at ¶82. Plaintiffs' unlawful UCL claim is impliedly preempted to the extent it rests on alleged violations of the FDCA and regulations promulgated thereunder. *Perez v. Nidek Co.*, 711 F. 3d 1109, 1120 (9th Cir. 2013) ("The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).") (quoting *In Re Medtronic, Inc.*, 623 F. 3d 1200, 1204 (8th Cir. 2010)). Claims that "exist solely by virtue of the FDCA" are impliedly preempted. *Id.* at 1119. Here, Plaintiffs are suing because the conduct allegedly violates FDCA requirements. And, Plaintiffs concede that the Sherman Law "has expressly adopted the federal labeling requirements as its own" (AC at ¶95) – in other words, the Sherman Law parallels the FDCA and merely adopts the FDCA as California law. Plaintiffs' allegations that Tom's has violated the Sherman Law therefore falls within the category of claims that "exist solely by virtue" of the FDCA. "The fact that Plaintiff's claim is technically brought under the UCL and the Sherman Law does not override the fact that Plaintiff explicitly requests relief which 'lies squarely within the province of the FDA." *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 773 (C.D. Cal. 2019) (internal quotations omitted) ("There can be no state law cause of action if a plaintiff's 'true goal is to privately enforce alleged violations of the FDCA" and further noting that "because the Sherman Law references and incorporates the FDCA, this Court cannot grant any relief to Plaintiff without referring to and applying provisions of the FDCA"). Moreover, Plaintiffs' claims fail to the extent they are predicated on a violation of the Sherman Law prohibiting "adulterated" drugs, as the Product is not a drug. *See* AC at ¶95 (relying on Sherman Law provision governing drugs and devices).

and CLRA because, among other things, Tom's allegedly failed to disclose the presence of PFAS in the Product, inducing Plaintiffs' purchases. AC at ¶¶210-33. However, "California courts have generally rejected a broad obligation to disclose[.]" *Wilson*, 668 F.3d at 1141; *McCoy v. Nestle United States, Inc.*, 173 F. Supp. 3d 954, 966 (N.D. Cal. 2016) ("A duty to disclose under California law does not extend to 'all information [that] may persuade a consumer to make different purchasing decisions.'") (citation omitted).

Rather, the duty to disclose only arises "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1025 (N.D. Cal. 2016) (quoting *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 337, 60 Cal. Rptr. 2d 539 (1997) (known as the *Judkin* factors)). Thus, absent a fiduciary relationship between the parties, the allegedly known and concealed fact must be material to trigger any duty to disclose. *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1329 (C.D. Cal. 2013) (citation omitted).

Plaintiffs fail to plausibly allege any duty to disclose. Plaintiffs have not, and cannot, assert that Tom's has a fiduciary duty to Plaintiff. As such, to succeed on the CLRA and UCL claims, Plaintiffs must establish that Tom's either had exclusive knowledge of material facts not known to Plaintiffs; actively concealed a material fact from the Plaintiffs; or made partial representations but also suppressed some material fact. To that end, Plaintiffs must plead sufficiently concrete facts to establish that Tom's had knowledge of the presence of PFAS, *at the very least*. In fact, to meet the second *Judkin* factor, Plaintiffs must plead that Tom's had *exclusive* knowledge; to meet the third *Judkin* factor, Plaintiffs must plead that Tom's *concealed* such knowledge; and to meet

the fourth *Judkin* factor, Plaintiffs must plead that Tom's *suppressed* such knowledge. Here, Plaintiffs make no such allegations. They allege only one purported Test, the methodology and results of which is undisclosed by Plaintiffs, which they claim found some trace amount of unspecified PFAS chemicals in the Product. Even if one credits the Test for purposes of this motion (which the Court need not do), Plaintiffs have not asserted, and cannot assert the threshold factual requirement that Tom's *knew* PFAS were present in the Product. As such, Plaintiffs are unable to adequately allege that Tom's has a duty to disclose. Because there is no duty to disclose, Plaintiffs' CLRA and UCL claims must be dismissed.

### D.    Plaintiffs Fail to State a Claim for Unjust Enrichment

As an initial matter, Plaintiffs fail to identify the state law under which they assert their unjust enrichment claim, which is grounds for dismissal on its own. *See In re Nexus 6P Prods. Liab. Litig.,* 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) ("As this Court and other courts in this district have recognized, due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." (internal quotation marks omitted) (citing cases)). Plaintiffs cannot maintain their claim under California law, where unjust enrichment is not recognized as a standalone cause of action. *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132-33 (N.D. Cal. 2020) ("California does not recognize a separate cause of action for unjust enrichment.") (collecting California and federal cases); *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) (dismissing unjust enrichment claim because it is not a separate cause of action). In any event, Plaintiffs' claim fails because it is based on the same allegedly misleading marketing upon which their statutory and common law fraud claims are based, which also fail as a matter of law. *See* AC at ¶¶270-276. *Akers v. Costco Wholesale Corp.*, 2022 U.S. Dist. LEXIS 177837, at *20 (S.D. Ill. Sep. 29, 2022) (dismissing unjust enrichment

claim, which "necessarily falls" with the ICFA claim the court already dismissed).[23] Thus, the claim for unjust enrichment should be dismissed.

## V.      Plaintiffs' Claims Must Be Dismissed Pursuant to the Primary Jurisdiction Doctrine

While Plaintiffs' claims are all subject to dismissal for the reasons set forth above, each of the claims should also be dismissed pursuant to the primary jurisdiction doctrine, which "applies where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 505 (2d Cir. 2022) (citing *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-59 (2d Cir. 1994)). A court invokes the primary jurisdiction doctrine when it determines that the agency, not the courts, should have the "initial decision-making responsibility." *Id.* (citing *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006)). The Second Circuit has determined that four factors—referred to as the "*Ellis* factors"—guide the analysis as to whether the primary jurisdiction doctrine applies:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Palmer*, 51 F.4th at 506.

As a preliminary matter, in December 2022, Congress enacted the Modernization of Cosmetics Regulation Act ("MoCRA"), which requires the FDA to study the use and safety of PFAS as a common type of cosmetic ingredient. This includes analysis of the scientific evidence

---

[23] Their claim is subject to Rule 9(b)'s heightened pleading requirements, which, as set forth above, Plaintiffs fail to satisfy. *See In re Arris Cable Modem Consumer Litig.*, 2018 U.S. Dist. LEXIS 1817, at *29 (collecting cases); *Nieto*, 2010 U.S. Dist. LEXIS 25256, at *15 (dismissing unjust enrichment claim under Illinois law because it sounds it fraud yet "fails to meet the particularity requirements of Rule 9(b)).

to determine if there are any risks associated with PFAS and, if so, at what levels. In this case, Tom's does not intentionally use or add PFAS to its Product – and Plaintiffs do not make any such allegation. If PFAS is present in any Product, then it would be considered a contaminant. Thus, the question at issue in this matter is within the discretion of the FDA and Plaintiffs are barred from raising their claims pursuant to the doctrine of primary jurisdiction.

Each of the *Ellis* factors weigh in favor of finding that the FDA has primary jurisdiction. First, resolution of Plaintiffs' claims requires consideration of how to test for PFAS, what level of PFAS is harmful, and what levels of PFAS are acceptable in the Product. Whether the Product contains impermissible levels of PFAS—or enough PFAS that the Product's labeling should have been changed—is a technical issue that requires policy considerations within the FDA's expertise. And, given its ubiquity, PFAS has been a focus of the plaintiffs' bar, so there is a likelihood of inconsistent rulings on the issue. *See In re Gerber Prods. Co. Heavy Metals Baby Food Litig.,* 2022 U.S. Dist. LEXIS 189822, at \*55 (E.D. Va. Oct. 17, 2022) (multiple courts considering similar issues will "likely result in a patchwork of decisions that vary by location, court, manufacturer, and product, resulting in different labeling standards for substantially similar . . . products produced by different manufacturers"). There is little doubt that PFAS pose novel and complex scientific and regulatory issues that the FDA is grappling with, and PFAS currently present issues outside the scope of the conventional experience of judges, requiring technical considerations within the FDA's field of expertise. Moreover, Plaintiffs allege injuries non-specific to themselves and that PFAS endanger the health of a considerable number of persons. The FDA's determination on these issues will materially aid the Court in resolving the issues here. Given the clear direction in MoCRA for the FDA to study and report on the use of these chemicals,

cases related to the safety of PFAS raise a substantial danger of inconsistent rulings. Thus, this case should be dismissed under the primary jurisdiction doctrine.

## VI.     Plaintiffs Should be Denied Leave to Amend

Courts deny leave to amend where, as here, a plaintiff "was made aware of the defects in her pleading, had an opportunity to cure them, and used that opportunity, albeit unsuccessfully." *Napoli v. Deluxe Corp.*, 2019 U.S. Dist. LEXIS 105165, at \*15 (E.D.N.Y. June 21, 2019) (citing *Brown v. Cerberus Capital Mgmt., L.P.*, 703 F. App'x 11, 15 (2d Cir. 2017) (summary order) (no abuse of discretion in denying motion to amend where "Plaintiffs enjoyed a full opportunity to amend, having been apprised of Defendants' views of the original complaint's shortcomings"). In this case, Tom's initial motion to dismiss put Plaintiffs on notice of the deficiencies in the original complaint, including (1) the lack of sufficient facts regarding the Test; (2) the failure to plead any basis to infer that the products Plaintiffs purchased contained PFAS; (3) the lack of factual allegations regarding each individual Plaintiff; and (4) the lack of any non-conclusory, non-speculative allegations regarding Tom's knowledge, intent, or duty to disclose. Plaintiffs did not even attempt to address these issues in the Amended Complaint. Thus, any amendment would be futile, and Plaintiffs should not be afforded a third opportunity to address deficiencies they could have addressed now. As a result, the Court should dismiss the Amended Complaint with prejudice.

## **CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety, with prejudice.

Dated: May 5, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ *Keith E. Smith*
Keith E. Smith
One Vanderbilt Ave
New York, New York 10017
Telephone: 212.801.9200
smithkei@gtlaw.com

*Attorneys for Defendants Tom's of Maine, Inc. and Colgate-Palmolive Company*