UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABIGAIL ESQUIBEL, TAMMY SEARLE, JEREMY WAHL, AIMEN HALIM and NICHOLAS SALERNO, individually and on behalf of all others similarly situated,

                Plaintiffs,

-against-

COLGATE-PALMOLIVE CO., and TOM'S OF MAINE, INC.,

                Defendants.

23-CV-00742-LTS

---

MEMORANDUM ORDER

        Abigail Esquibel, Tammy Searle, Jeremy Wahl, Aimen Halim, and Nicholas Salerno ("Plaintiffs") bring this proposed class action against Colgate-Palmolive Co. and Tom's of Maine, Inc. ("Defendants") asserting claims for violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, et seq.), violation of California's False Advertising Law (Business & Professions Code § 17500), violation of California's Unfair Competition Law (Business & Professions Code § 17200, et seq.), violation of California's Consumer Legal Remedies Act (Civil Code § 1770), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS §505/1, et seq.), breach of express warranty, fraud, constructive fraud, and unjust enrichment.  (Docket entry no. 30 ("Am. Compl.") ¶ 12.)  Plaintiffs assert that this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act (28 U.S.C. § 1332(d)).  (Am. Compl. ¶ 20.)

        Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6), failure to meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b), and under the primary jurisdiction doctrine. (Docket entry no. 39 ("Defs. Mem.") at 1-5.)

The Court has considered the parties' submissions carefully and, for the following reasons, grants the Defendants' motion to dismiss the Amended Complaint in its entirety for lack of subject matter jurisdiction. Plaintiffs are granted leave to move to replead within 21 days of the entry of this Memorandum Order.

BACKGROUND

Unless otherwise indicated, the following allegations are taken from the Amended Complaint and are presumed true for the purposes of this motion. Defendant Tom's of Maine ("Tom's") is a Maine corporation that makes and sells personal care products. (Am. Compl. ¶¶ 19, 23.) Tom's markets its products as "natural," and produced using "naturally sourced and naturally derived ingredients." (Id. ¶¶ 26, 108.) Defendant Colgate-Palmolive has been the majority owner of Tom's since 2006. (Id. ¶ 23.) Plaintiffs Esquibel, Searle, Wahl, Halim, and Salerno are California and Illinois residents who purchased Tom's Wicked Fresh! Mouthwash ("the Product") for personal use numerous times between 2021 and 2023. (Id. ¶¶ 142-61.) Plaintiffs Esquibel, Searle, Wahl, and Halim most recently bought the Product from brick-and-mortar retailers in California and Illinois. (Id. ¶¶ 142-57.) Plaintiff Salerno most recently bought the Product online through Amazon's website. (Id. ¶ 158.)

Plaintiffs allege that the Product contains per- and polyfluoroalkyl substances ("PFAS"). (Am. Compl. ¶¶ 1, 67.) PFAS are man-made chemicals that have been called "forever chemicals," because the human body cannot break them down or remove them. (Id.

¶¶ 44-46.)  Peer-reviewed studies have found that PFAS exposure can lead to serious medical conditions, including various kinds of cancers, thyroid disease, liver damage, decreased fertility, and developmental delays in children.  (Id. ¶¶ 52-53.)  Humans can be exposed to PFAS in numerous ways, including through ingestion, inhalation, and skin absorption.  (Id. ¶ 50.)

Plaintiffs assert that they ascertained the presence of PFAS in the Product through "independent third-party testing" that they commissioned.  (Am. Compl. ¶¶ 65-67.)  This testing "was conducted in accordance with accepted industry standards for detecting the presence of PFAS" and "detected material levels of multiple PFAS" in the Product.  (Id. ¶¶ 66-67.)  The testing revealed that the Product contains PFOA—a type of PFAS that has been linked to negative health effects—"in amounts 85 times the EPA's recommended levels" of PFOA exposure.  (Id. ¶¶ 68-73.)

Plaintiffs assert that "Defendants knew, or at minimum should have known, that its [sic] Product contains PFAS," because Defendants are "large, sophisticated corporations in the business of manufacturing . . . 'natural' personal care products."  (Am. Compl. ¶¶ 105-106.)  Plaintiffs further assert that, given Defendants' commitment to using quality ingredients, they should have detected the presence of PFAS in the Product during the manufacturing process.  (Id. ¶ 107.)  Plaintiffs claim that, by marketing the Product as natural even though it was contaminated with PFAS and by failing to list PFAS on the Product's ingredients list or otherwise warn consumers about their presence in the Product, Defendants engaged in fraud, false advertising, and deceptive business practices.  (Id. ¶¶ 98, 108, 110, 140.)

DISCUSSION

An action must be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it.  Fed. R. Civ. P. 12(b)(1); see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Makarova, 201 F.3d at 113.  When determining a motion to dismiss an action for lack of subject matter jurisdiction, the Court must accept all factual allegations pled in the Complaint as true, Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006), but the Court may also consider relevant materials beyond the pleadings.  Makarova, 201 F.3d at 113.  To survive a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  For a claim to be plausible, the plaintiff must plead facts that raise the likelihood that the defendant acted unlawfully above "a sheer possibility."  Iqbal, 556 U.S. at 678.

Article III of the Constitution of the United States restricts the jurisdiction of federal courts to actual cases or controversies.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  To demonstrate Article III standing, a plaintiff must establish: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of; and (3) redressability of the injury by a "favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).  To satisfy the injury-in-fact requirement, a plaintiff must allege facts showing that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Id. at 560.  In a potential class action, the named plaintiffs must satisfy the requirements of Article III standing.  See Lewis v. Casey, 518 U.S.

343, 357 (1996).  Plaintiffs cannot rely on the standing of unnamed potential class members.  Id. at 357.

The Court finds that Plaintiffs lack standing to pursue their claims because they have not shown that they suffered an injury-in-fact.  Plaintiffs' claims are based on their allegation that the bottles of mouthwash they purchased contained PFAS.  Their complaint does not, however, plead facts sufficient to support a plausible inference that the bottles Plaintiffs purchased were tainted.  Plaintiffs plead that the Product contained PFAS based solely on a third-party test they had commissioned.  (Am. Compl. ¶¶ 65-67.)  Plaintiffs plead that the testing "was conducted in accordance with accepted industry standards for detecting the presence of PFAS" and "detected material levels of multiple PFAS . . . ."  (Am. Compl. ¶¶ 66-67.)  Plaintiffs provide no additional information about the test.  They do not allege that bottles they actually purchased were tested, nor do they even plead facts indicating how many units of the Product were tested, where those units were acquired, where the test took place, or what entity performed the test.  On the basis of Plaintiffs' sparse factual allegations, the Court cannot conclude that the presence of PFAS in bottles that Plaintiffs purchased was anything more than a "sheer possibility."  See Iqbal, 556 U.S. at 678.

The allegations in Plaintiffs' claim are substantively similar to, and fail for the same reasons as, the claims brought in Onaka v. Shiseido Americas Corp., No. 21-CV-10665-PAC, 2023 WL 2663877, at *1 (S.D.N.Y. Mar. 28, 2023).  In that case, plaintiffs asserted that the beauty products they purchased contained PFAS based on third-party testing which detected the chemicals in each type of product plaintiffs purchased.  Onaka, 2023 WL 2663877, at *2.  As here, plaintiffs claimed that defendant committed fraud by marketing its products as "natural" even though they were contaminated with PFAS.  Id.  The court found that plaintiffs had not

alleged sufficient facts to establish that the products they actually purchased were contaminated, and thus that they had suffered an injury-in-fact.  Id. at *5.  The court noted that plaintiffs had not stated when the third-party testing occurred, whether the testing was "reasonably near in time" to plaintiffs' purchases, or whether they had tested the specific products they purchased.  Id. at *4.  Altogether, the factual allegations did not establish that it was more than "a sheer possibility" that either the specific products plaintiffs purchased contained PFAS or that "the presence of PFAS in the products [was] so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once."  Id. at *4-5.[1]

        Plaintiffs argue that their testing allegations are sufficient because they "are not required to prove the accuracy or rigor of the methodology used in their testing results" at the motion to dismiss stage and because "Onaka does not create any legal requirement for plaintiffs to test their personal products for PFAS contamination in order to establish injury in fact." (Docket entry no. 42 ("Pls. Mem.") at 13-14.)  These arguments misconstrue the nature of the problem at this pleading stage.  Plaintiffs' claims are not deficient because they failed to defend the accuracy of their test's methodology.  Rather, the claims are inadequate because Plaintiffs have pled insufficient information about the third-party testing to support their assertion that the products the named Plaintiffs purchased plausibly contained PFAS.  The Court does not read

---

[1] Other recent cases in this district involving alleged PFAS contamination have also been dismissed for a lack of standing where plaintiffs failed to plead sufficient facts to plausibly establish that the products they purchased actually contained PFAS.  See Hicks v. L'Oréal U.S.A., Inc., No. 22-CV-1989-JPC, 2023 WL 6386847, at *10 (S.D.N.Y. Sept. 30, 2023) (finding plaintiffs lacked standing despite a test showing PFAS in makeup products because "Plaintiffs have not adequately pleaded that the mascaras they purchased contained PFAS . . . ." (emphasis added)); Dalewitz v. Procter & Gamble Co., No. 22-CV-07323-NSR, 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023) (finding plaintiff lacked standing because his alleged testing merely demonstrated the presence of fluorine—a proxy for the presence of PFAS—in defendant's product, and, as a result, "Plaintiff fails to plausibly allege [the product] in fact contains PFAS . . . .").

Onaka as establishing a legal requirement that plaintiffs must test the specific units they purchased for PFAS in order to establish injury-in-fact. There are other ways Plaintiffs could have established the plausibility of their injury. For example, Plaintiffs might have pled facts that raised a plausible inference that the Product was systemically contaminated such that any bottle of the Product, including the ones Plaintiffs purchased, likely contained PFAS. See John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 734 (2d Cir. 2017) (finding a sufficiently likely injury where plaintiff alleged that Whole Foods overcharged him personally, as evidenced by a test of 80 different Whole Foods products that found that all 80 products had packaging with misstated weights).

Alternatively, Plaintiffs assert that the mere risk that the mouthwash they purchased could have contained PFAS, by itself, constitutes an injury-in-fact, because they would not have bought the Product or would have paid less for it had they known that such a risk existed. (Am. Compl. ¶ 99.) The mere risk that the Product was contaminated with an injurious substance, however, does not establish an economic injury. See Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1030 (8th Cir. 2014) ("[I]t 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.'" (emphasis in original)). In other words, to establish an injury-in-fact, Plaintiffs must plausibly allege the presence of PFAS in the mouthwash they purchased because, if PFAS were not present, then Plaintiffs received exactly what they bargained for—a natural mouthwash.

Leave to file Motion to Amend

Plaintiffs have requested leave to replead in the event the Amended Complaint is dismissed. (Pls. Mem. at 28.) "'Leave to amend, though liberally granted, may properly be denied' for 'repeated failure to cure deficiencies by amendments previously allowed' or 'futility of amendment,' among other reasons." Bischoff v. Albertsons Cos., No. 22-CV-4961-CS, 2003 WL 4187494, at *7 (S.D.N.Y. June 26, 2023) (quoting Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008)). Still, there is a particularly strong preference for allowing amendment when "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading." Allianz Glob. Invs. GmbH v. Bank of Am. Corp., 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020); see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Although Plaintiffs have already amended their complaint once following a prior round of briefing in which Defendants alerted Plaintiffs to the potential deficiencies in their argument for standing, Plaintiffs did not previously have the benefit of a Court ruling putting them on notice of these deficiencies. In the interests of justice, Plaintiffs are granted leave to file a motion to amend, tendering a proposed second amended complaint that meets the requirements of constitutional standing as discussed above.

Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction is granted in its entirety. Plaintiffs may file a motion for

leave to file a Second Amended Complaint that is compliant with the requirements of constitutional standing discussed above.  Any such motion must comply with the applicable federal, local, and individual rules of practice and include Plaintiffs' proposed Second Amended Complaint, as well as a redline comparing that pleading to Plaintiffs' Amended Complaint.  Should Plaintiffs fail to file a motion for leave to amend **within 21 days of the entry of this Memorandum Order**, this action will be dismissed for lack of subject matter jurisdiction without further advance notice.  This Memorandum Order resolves Docket Entry no. 38.

SO ORDERED.

Dated: New York, New York
November 9, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge