UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABIGAIL ESQUIBEL, TAMMY SEARLE,
JEREMY WAHL, AIMEN HALIM,
NICHOLAS SALERNO and JASON
ZIRPOLI, individually and on behalf of all
others similarly situated,

                       Plaintiffs,

            -against-

COLGATE-PALMOLIVE CO., and TOM'S
OF MAINE, INC.,

                Defendants.

23-CV-00742-LTS

---

<u>MEMORANDUM OPINION AND ORDER</u>

       Abigail Esquibel, Tammy Searle, Jeremy Wahl, Aimen Halim, Nicholas Salerno, and Jason Zirpoli ("Plaintiffs") bring this proposed class action against Colgate-Palmolive Co. ("Colgate") and Tom's of Maine, Inc. ("Tom's") (together, "Defendants"), asserting claims for violation of California's False Advertising Law (Business & Professions Code § 17500) ("Count I"), violation of California's Unfair Competition Law (Business & Professions Code § 17200 et seq.) ("Count II"), violation of California's Consumer Legal Remedies Act (Civil Code § 1770) ("Count III"), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS §505/1 et seq.) ("Count IV"), fraud ("Count V"), constructive fraud ("Count VII"),[1] and unjust enrichment ("Count VIII").  (Docket entry no. 57 ("Second Amended Complaint" or "SAC") ¶ 12.)  This Court has subject matter jurisdiction of this action under the Class Action Fairness Act (CAFA; 28 U.S.C. § 1332(d)).  (SAC ¶ 21.)

---

[1]     The Second Amended Complaint refers to Plaintiffs' constructive fraud and unjust enrichment claims as Count VII and Count VIII, respectively, omitting a Count VI.  For the purposes of this Memorandum Opinion and Order, the Court adopts Plaintiffs' numbering.

On November 9, 2023, the Court gave Plaintiffs leave to amend their complaint for a second time to address deficiencies in their pleadings.  Defendants move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, pursuant to Federal Rule of Civil Procedure 9(b) for failure to meet the heightened pleading standard for fraud, and under the primary jurisdiction doctrine.  (Docket entry no. 62 ("MTD") at 1; docket entry no. 63 ("Defs. Mem.") at 23.)  The Court has carefully considered the submissions in connection with the instant motion.  For the following reasons, the Court grants the Defendants' motion to dismiss the Second Amended Complaint in part and denies it in part.

## Background

The following allegations are taken from the Second Amended Complaint and documents integral thereto and are presumed true for the purposes of this motion.  The Court assumes familiarity with the facts of this case as summarized in the Court's November 9, 2023 Memorandum Order.  (Docket entry no. 47 (the "November Order").)

Defendant Tom's of Maine ("Tom's") is a Maine corporation that makes and sells personal care products.  (SAC ¶¶ 20, 24.)  Tom's markets its products as "natural," and refers to itself as the "#1 Natural Mouthwash Brand."  (Id. ¶¶ 27, 31.)  Defendant Colgate-Palmolive, a Delaware corporation with its principal place of business in New York, has been the majority owner of Tom's since 2006.  (Id. ¶¶ 19, 24.)  Plaintiffs Esquibel, Searle, Wahl, Halim, Salerno, and Zirpoli are residents of California, Illinois, and New York who purchased Tom's Wicked Fresh! Mouthwash ("the Product") for personal use numerous times between 2021 and 2023. (Id. ¶¶ 148, 152, 156, 160, 164, 168.)  Plaintiffs Esquibel, Searle, Wahl, Halim, and Zirpoli most

recently bought the Product from brick-and-mortar retailers in California, Illinois, and New York.  (Id.)  Plaintiff Salerno most recently bought the Product through Amazon's website.  (Id. ¶ 164.)

Plaintiffs allege that the Product contains per- and polyfluoroalkyl substances ("PFAS").  (Id. ¶ 1.)  PFAS are harmful, manmade chemicals that have been called "forever chemicals" because of their tendency to build up and persist in the body over time.  (Id. ¶ 2.)  Humans can be exposed to PFAS in numerous ways, including through ingestion, inhalation, and skin absorption.  (Id. ¶ 51.)  Plaintiffs assert that they ascertained the presence of PFAS in the Product through "independent third-party testing" in July 2022.  (Id. ¶¶ 66-68.)  This testing "detected material levels" of multiple PFAS in the Product.  (Id. ¶ 68.)

In the November Order, the Court granted Defendants' motion to dismiss the Plaintiffs' First Amended Complaint ("FAC") in its entirety, finding that Plaintiffs failed to demonstrate standing for any of the named Plaintiffs based on the presence of PFAS found in a single bottle of the Product, which none of the named Plaintiffs had purchased.  (Docket entry nos. 31, 47.)  In particular, the Court found that Plaintiffs "pled insufficient information about the third-party testing to support their assertion that the products the named Plaintiffs purchased plausibly contained PFAS."  (November Order at 6.)  In November 2023, Plaintiffs tested three additional bottles of the Product bought by Plaintiffs Esquibel and Halim in January 2023 (in California and Illinois, respectively)[2] and Plaintiff Zirpoli in Fall 2023 (in New York) at retail stores.  (SAC ¶¶ 69, 148, 160, 168.)  The testing revealed that the bottles contained PFOA and N-etFOSAA—types of PFAS linked to negative health effects.  (Id. ¶¶ 72, 75, 78.)

---

[2]    The Second Amended Complaint does not provide any further specificity regarding the dates or locations of these purchases.

DISCUSSION

Rule 12(b)(1)

As a threshold issue, the Court first considers Defendants' Rule 12(b)(1) challenge to Plaintiffs' standing.  Defendants pose both a facial and a fact-based challenge to Plaintiffs' standing.  The Court will discuss each in turn.

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  When determining a motion to dismiss an action for lack of subject matter jurisdiction, the Court must accept all factual allegations pled in the complaint as true, Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006), but the Court may also consider relevant materials beyond the pleadings.  Makarova, 201 F.3d at 113.

Article III of the Constitution of the United States restricts the jurisdiction of federal courts to actual cases or controversies.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 337-38 (2016).  To demonstrate Article III standing, a plaintiff must establish: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of; and (3) redressability of the injury by a "favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).  To satisfy the injury-in-fact requirement, a plaintiff must allege facts showing that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Id. at 560 (internal quotations and citations omitted).  In a class action, the named plaintiffs must satisfy the requirements of Article III standing.  See Lewis v. Casey, 518 U.S. 343, 357 (1996).  Plaintiffs cannot rely on the standing of unnamed potential class members. See id. at 357.

<u>Facial Challenge to Standing</u>

The Court finds that Plaintiffs Esquibel, Halim, and Zirpoli have sufficiently alleged that they suffered a cognizable injury-in-fact, conferring standing. Plaintiffs Searle, Wahl, and Salerno lack standing because, even considering the three additional tests conducted in 2023, the Second Amended Complaint does not plead facts sufficient to support a plausible inference that the bottles Plaintiffs Searle, Wahl, and Salerno purchased were contaminated with PFAS.

All Plaintiffs assert a price-premium theory of injury. (Docket entry no. 69 ("Pls. Mem.") at 8.) In this Circuit, "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III." <u>Onaka v. Shiseido Americas Corp.</u>, No. 21-CV-10665-PAC, 2023 WL 2663877, at *3 (S.D.N.Y. Mar. 28, 2023) ("<u>Onaka I</u>") (quoting <u>Colpitts v. Blue Diamond Growers</u>, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021)). Plaintiffs must nevertheless plead sufficient facts to make it plausible that "<u>their</u> product <u>actually exhibited</u> the alleged defect." (November Order at 7 (quoting <u>Wallace v. ConAgra Foods, Inc.</u>, 747 F.3d 1025, 1030 (8th Cir. 2014) (emphasis in original)).); <u>see also</u> <u>Maddox v. Bank of New York Mellon Tr. Co., N. A.</u>, 19 F.4th 58, 65-66 (2d Cir. 2021).

A plaintiff can allege facts sufficient to confer Article III standing in a misbranded products case by alleging (1) that plaintiff's purchased products were misbranded; (2) that a third-party investigation has revealed defects in the same line of such products; or (3) a broad systemic fraud in a market in which plaintiffs regularly transact. <u>Onaka I</u>, 2023 WL 2663877, at *4. Plaintiffs Esquibel, Halim, and Zirpoli have adequately demonstrated standing by pleading

that the November 2023 tests revealed that bottles that they actually purchased were found to contain detectable levels of PFAS.[3]

Plaintiffs Searle, Wahl, and Salerno did not test the bottles that they themselves purchased, and instead assert that they have standing based on systemic contamination of the product line.  (Pls. Mem. at 3; SAC ¶ 69 n.37.)  To support a plausible inference of systemic contamination based on data collected from a few samples, this court has looked for some "specific factual basis" for the logical inference that the otherwise isolated cases of contamination may be extrapolated to a larger set of products.  Kell v. Lily's Sweets, LLC, No. 23-CV-0147-VM, 2024 WL 1116651, at *4 (S.D.N.Y. Mar. 13, 2024) (citing Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 148-49 (2d Cir. 2011)).  Put differently, "a plaintiff relying on indirect means to assert an injury-in-fact must 'meaningfully link the results of their independent testing' to the products actually purchased."  Hicks v. L'Oreal U.S.A., Inc., No. 22-CV-1989-JPC, 2024 WL 4252498, at *9 (S.D.N.Y. Sept. 19, 2024) ("Hicks II")) (quoting Onaka v. Shiseido Corp., No. 21-CV-10665-PAC, 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024) ("Onaka II")).

---

[3]    Defendants argue that Plaintiffs cannot establish an injury under a price premium theory through the products purchased and tested in 2023 because plaintiffs may not acquire standing by purchasing products "solely for litigation."  (Defs. Mem. at 13 (citing Taylor v. Bernanke, No. 13-CV-1013, 2013 WL 4811222, at *10 (E.D.N.Y. Sept. 9, 2013)).)  The Second Amended Complaint indicates, however, that Plantiffs Esquibel and Halim bought the tested mouthwash in January 2023, and filed the initial complaint in the instant case on January 27, 2023.  (Docket entry no. 1; SAC ¶¶ 148, 160.)  It is not obvious from the face of the Complaint that either Esquibel or Halim purchased their products after initiating this action.  Additionally, Plaintiff Zirpoli, who purchased the Product in fall 2023, was not a party to this suit until the filing of the SAC on May 9, 2024.  (SAC ¶ 168.)  Therefore, the allegations of the SAC support the plausible inference that all three Plaintiffs purchased their tested products before joining this action, and Defendants' argument is without proper support in the record.

   In <u>John v. Whole Foods Market Group, Inc.</u>, the Second Circuit considered allegations that a Whole Foods grocery store in Manhattan overcharged the plaintiff by selling products marked with inflated weight totals.  858 F.3d 732 (2d Cir. 2017).  Although the plaintiff could not identify a specific transaction in which Whole Foods had overcharged him, he asserted standing based on the results of an investigation by the New York City Department of Consumer Affairs finding that 89% of the 80 Whole Foods products tested overstated their weights.  <u>Id.</u> at 734.  The Second Circuit found these allegations sufficient to establish that the plaintiff plausibly overpaid for a "at least one" product, making particular note of the facts that the study (1) took place in the same time period as the plaintiff's shopping, (2) covered two specific Whole Foods stores where he shopped, and (3) included the specific products (cheese and cupcakes) that plaintiff purchased monthly.  <u>Id.</u> at 735, 737.

   Following <u>John</u>, district courts in this Circuit have applied this systemic contamination theory to claims dealing with misbranded products and, in doing so, have identified certain factors as relevant to determining when "a third party's analysis can be reasonably extrapolated to the plaintiff's individual purchase."  <u>Kell</u>, 2024 WL 1116651, at *5.  These include: whether the consumer bought the product from the same store where a defective product was found, <u>see</u> <u>John</u>, 858 F.3d at 735; <u>cf.</u> <u>Kell</u>, 2024 WL 1116651, at *4 (concluding that a third-party study was less compelling because it did not state where the products were purchased); whether the consumer purchased the product with significant regularity, <u>see</u> <u>John</u>, 858 F.3d at 734 (noting that plaintiff bought the products in question once or twice per month); the total sample size of products tested, <u>see</u> <u>Hicks II</u>, 2024 WL 4252498, at *10 ("[T]he testing should involve more than a small number[.]"); what percentage of that sample size was demonstrably contaminated, <u>see</u> <u>John</u>, 858 F.3d at 736; and whether the product tested was the

same product that Plaintiffs bought, see Clinger v. Edgewell Pers. Care Brands, LLC, No. 21-CV-1040-JAM, 2023 WL 2477499, at *4 (D. Conn. Mar. 13, 2023) ("[I]t is reasonable to assume that the same product line would involve . . . the same likelihood of residual benzene contamination.").

The Court finds that these factors weigh against standing for Plaintiffs Searle, Wahl, and Salerno. First, Plaintiffs purchased products from different stores, which were in geographically disparate locations. See Kell, 2024 WL 1116651 at *4 (finding that the "New York area" was not specific enough as to geographic scope). Plaintiff Salerno bought the Product online, further complicating any inferences based on geography. (SAC ¶ 164.) Second, the Plaintiffs' purchases vary significantly in time, with some purchased nearly a year before the purchases of the tested products. See Hernandez v. Wonderful Co. LLC, No. 23-CV-1242-ER, 2023 WL 9022844, at *6 (S.D.N.Y. Dec. 29, 2023) ("Hernandez I") (finding that testing within the same month was "reasonably near in time"). Third, Plaintiffs cite four samples in total, a significant difference from the eighty total products in John and the thirty-two total samples in Hicks II. John, 858 F.3d at 734; Hicks II, 2024 WL 4252498, at *11; cf. Kell, 2024 WL 1116651 at *4 (finding that two or three chocolate bars were not enough). Fourth, there is no indication that Plaintiffs bought the product with any regularity, unlike the plaintiff in John. 858 F.3d at 734. Taking these factors together, the Court finds that Plaintiffs' allegations are insufficient to support an inference that the Product was so widely contaminated that any purchase, from any source, in the last two years could plausibly have been affected.

Factual Challenge to Standing

Defendants further raise a factual challenge to standing, asserting that Plaintiffs suffered "no Article III injury because there is no uniformly detectable PFAS in any of the

Mouthwash." (Defs. Mem. at 13.) In a factual challenge to standing, Defendants may provide evidence outside of the pleading that controverts a plaintiff's allegations; here, Defendants have not done so. "[P]laintiffs are entitled to rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016). Where the parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts . . . which do not actually challenge the factual substance described . . . the [c]ourt will not consider them as creating disputes of fact." New Jersey v. N.Y.C. Dep't of Educ., No. 18-CV-6173-JMF, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021) (quotation omitted).

Defendants argue that the laboratory tests Plaintiffs proffer are insufficient to show that there actually were PFAS in the tested bottles, characterizing the alleged defect as a failure to show "uniformly detectable PFAS in any of the tested Mouthwash." (See docket entry no. 64 (the "Test Results"); Def. Mem. at 14.) Because the PFAS levels reported in two of the three 2023 tests are "approximate" values designated as "below the detection limit" of the laboratory, Defendants contend that Plaintiffs fail to establish any meaningful levels of PFAS in the Product. (Defs. Mem. at 14.) Defendants misapprehend Plaintiffs' burden at the pleading stage. Defendants' challenge pertains to the accuracy of, and meaning that should be ascribed to, the test results but does not controvert Plaintiffs' allegations that the tests detected PFAS in the products. Test methodology and interpretation issues need not be resolved at the pleading stage. See John, 858 F.3d at 737. Defendants fail to contradict Plaintiffs' allegations underlying the standing of Esquibel, Halim, and Zirpoli, and the Court rejects the fact-based challenge

accordingly.  Defendants' Rule 12(b)(1) challenge to these three Plaintiffs' standing to assert

damages claims is therefore denied.

Standing to seek Injunctive Relief

Plaintiffs assert that they have standing to seek injunctive relief, alleging that they

would like to buy the product again if the alleged harms are effectively cured.  (SAC ¶ 230.)

"Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or

immediate threat' of injury."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016)

(quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111-12 (1983)).  Plaintiffs' allegations are

insufficient because they do not indicate that they are facing a threat of future injury.

 "Although past injuries may provide a basis for standing to seek money damages,

they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she

is likely to be harmed again in the future in a similar way."  Id.  Plaintiffs cite Ninth Circuit case

law holding that the "the threat of future harm may be the consumer's plausible allegations that

she might purchase the product in the future . . . as she may reasonably, but incorrectly, assume

that the product was improved."  (Pls. Mem. at 10 (citing Davidson v. Kimberly-Clark Corp.,

889 F.3d 956, 970 (9th Cir. 2018)).)  In the Second Circuit, however, "past purchasers of a

consumer product who claim to be deceived by that product's packaging have, at most, alleged a

past harm . . . .  [The] next time they buy one of the newer [products], they will be doing so with

exactly the level of information they claim they were owed from the beginning."  Berni v.

Barilla, S.p.A., 964 F.3d 141, 147-48 (2d Cir. 2020).

Accordingly, Defendants' motion is granted as to Plaintiffs' claims for injunctive

relief.

Rules 12(b)(6) and 9(b)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The factual allegations pleaded "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Defendants argue that Plaintiffs have failed to plead facts sufficient to sustain any of their claims, and that Plaintiffs' fraud-based claims are insufficient to meet the pleading standard of Rule 9(b). (Defs. Mem at 19.) Courts often analyze California's Consumer Legal Remedies Act, the False Advertising Law, and the Unfair Competition Law together because they have similar and overlapping requirements. Quintanilla v. WW Int'l, Inc., 541 F. Supp. 3d 331, 344 (S.D.N.Y. 2021) (citing In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)). Plaintiffs asserting misrepresentation claims under these laws must meet the pleading standards of Rule 9(b) and demonstrate that "reasonable consumers" are likely to be deceived by any alleged misrepresentations. Id. at 345 (internal citations omitted); Schneider v. Colgate-Palmolive Co., 677 F. Supp. 3d 91, 99 (N.D.N.Y. 2023). Claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) are likewise subject to the Rule 9(b) heightened pleading requirement and the "reasonable consumer" standard. In re Fyre Festival Litig., 399 F. Supp. 3d 203, 224 (S.D.N.Y. 2019); Stemm v. Tootsie Roll Indus., Inc., 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing Mullins v. Direct Digital, LLC, 795 F.3d 654, 673 (7th Cir. 2015)).

Rule 9(b)

Because Plaintiffs' statutory and fraud-based common law claims are all subject to the heightened pleading requirement of Rule 9(b), the Court first turns to this common issue. While Rule 9(b) requires that the circumstances of fraud be plead with particularity, plaintiffs may allege states of mind, including intent and knowledge, generally. O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991). Though Rule 9(b) has heightened pleading requirements, "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). Plaintiffs may not make conclusory statements about intent, but it is sufficient for plaintiffs to plead facts that give rise to a "strong inference of fraudulent intent," for example by "alleging facts to show that defendants had both motive and opportunity to commit fraud." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 634 (2d Cir. 1996) (internal citation omitted); O'Brien, 936 F.2d at 676.

In the instant case, Plaintiffs allege that Defendants were aware of the higher prices that plaintiffs were willing to pay for natural products as well as the rising consumer demand for natural products. (SAC ¶¶ 122-25.) At this stage, these are sufficient facts to allege a "motive and opportunity to commit fraud." S.Q.K.F.C., 84 F.3d at 634. Defendants further argue that the failure to provide details regarding the tests which Plaintiffs conducted renders the identification of the allegedly fraudulent statement insufficient. Defendants also contend that Plaintiffs fail to allege which advertisement, marketing or labeling Plaintiffs relied on. (Defs. Mem. at 20.) As elaborated above, however, the Court finds that Plaintiffs make plausible allegations that the Products tested contained PFAS. Plaintiffs also specifically allege that they were deceived by the use of the word "natural" on the bottle. (Pls. Mem. at 17; see SAC

¶¶ 29-31.)  The Court finds these allegations sufficient to meet the heightened pleading standard under Rule 9(b).

### State Statutory Claims (Rule 12(b)(6))

Having established that Rule 9(b) has been satisfied, the Court next considers whether Plaintiffs have adequately pleaded each claim under Rule 12(b)(6).

### California False Advertising Law

To state a claim under California's False Advertising Law (FAL), plaintiffs need "only to show that members of the public are likely to be deceived by an advertisement." Orchard Supply Hardware, LLC v. Home Depot USA, Inc., 967 F. Supp. 2d 1347, 1366 (N.D. Cal. 2013) (internal quotations omitted).  Defendants argue that Plaintiffs (1) cannot base FAL claims on omissions; and (2) have not plead significant facts that a reasonable person would be deceived.  (Defs. Mem. at 18-20).  Both arguments lack merit.  As described above, Plaintiffs' claims are not based on an omission, but rather on the affirmative use of the word "natural" on the Product's packaging.  (Pls. Mem. at 17; see SAC ¶¶ 29-31.)  Second, Plaintiffs allege facts indicating that members of the public are likely to be deceived by the labeling of the Product as "natural."  (See SAC ¶ 212.)  Claims subject to the "reasonable consumer" standard typically do not warrant resolution at the motion to dismiss stage.  Whether "interpretation" of a product label is "unreasonable as a matter of law is generally reached [at the motion to dismiss stage] only where, for instance . . . a plaintiff's claims as to the impressions that a reasonable consumer might draw are patently implausible or unrealistic."  Anderson v. Unilever U.S., Inc., 607 F. Supp. 3d 441, 454 (S.D.N.Y. 2022) (quoting Eidelman v. Sun Prods. Corp., No. 16-CV-3914-NSR, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (alterations in original) (internal quotations omitted)).  "It is not unreasonable as a matter of law to expect that a product labeled

'natural' or 'all natural' contains only natural ingredients."  Segedie v. Hain Celestial Grp., Inc., No. 14-CV-5029-NSR, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015).  Another judge of this court recently found, under similar circumstances, that "Plaintiffs sufficiently allege[d] the expectations of a reasonable consumer" at the motion to dismiss stage in light of the "tension between various representations on the packaging of the Product [describing the product as 'All Natural'] and the alleged health risks posed by PFAS."  Hernandez v. Wonderful Co., LLC, No. 23-CV-1242-ER, 2024 WL 4882180, at *8 (S.D.N.Y. Nov. 25, 2024) ("Hernandez II").  The Court does not find Plaintiffs' suggested inference "unreasonable as a matter of law."  Anderson, 607 F. Supp. 3d at 452.[4]  The Motion is accordingly denied insofar as it seeks the dismissal of Plaintiff's California False Advertising Claims (Count I) pursuant to Rule 12(b)(6).

### California Consumer Legal Remedies Act

The CLRA provides a private cause of action for any consumer who suffers damage from a practice declared to be unlawful by the CLRA.  Morrell v. WW Int'l, Inc., 551 F. Supp. 3d 173, 182 (S.D.N.Y. 2021).  Courts applying California law have often found that consumers who "purchased products in reasonable reliance on the defendant's misleading representations or advertising have suffered damage" sufficient to state a CLRA claim.  Id. CLRA claims are governed by the reasonable consumer test, requiring Plaintiffs to "show that members of the public are likely to be deceived."  Clevenger v. Welch Foods, Inc., 501 F. Supp.

---

[4]      Defendants cite a Second Circuit summary order which found that a reasonable consumer would not interpret the brand name "Florida's Natural" to indicate the absolute absence of artificial components.  Axon v. Florida Nat. Grower's Inc., 813 F. App'x 701, 705 (2d Cir. 2020) (summary order); (See Defs. Mem. at 3.)  The reasoning of that non-precedential order is not, however, preclusive of a different interpretation of the word "natural" when used alone.  "It simply is not a fair reading of Axon . . . that as a matter of law, no use of the term 'natural' can be understood by a reasonable consumer to signify the absence of synthetic ingredients."  Barton v. Pret A Manger (USA) Ltd., 535 F. Supp. 3d 225, 240-41 (S.D.N.Y. 2021).

3d 875, 884 (C.D. Cal. 2020).  As discussed above, Plaintiffs both allege reliance under the price premium theory of injury and meet the reasonable consumer pleading standard.  Defendants' motion is therefore denied to the extent it seeks dismissal of Count III.

                        California Unfair Competition Law

            To state a claim under California's Unfair Competition Law (UCL), a plaintiff must plead "either an (1) unlawful, unfair, or fraudulent business practice or (2) unfair, deceptive, untrue, or misleading advertising."  Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1043 (9th Cir. 2003) (internal citations omitted).  Plaintiffs argue that Defendants' practices violated the UCL in numerous ways.  First, Plaintiffs assert that the misbranding of the products constituted "unlawful" business practices because they allegedly violate the: FAL, CLRA, the federal Food, Drug, and Cosmetic Act (FDCA), and California's Sherman Food, Drug, and Cosmetic Law ("CA Sherman Law").  As explained above, Plaintiffs have adequately pleaded claims under the FAL and CLRA.  Plaintiffs may not, however, bring a claim under the FDCA because the FDCA does not provide a private right of action.  PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997).  "To the extent Plaintiffs' UCL claim rests on violations of the FDCA, that claim 'exist[s] solely by virtue of the FDCA,'" and it is preempted. Rodriguez v. Target Corp., No. 22-CV-2982-LGS, 2022 WL 18027615, at *3 (S.D.N.Y. Dec. 30, 2022) (quoting Glover v. Bausch & Lomb Inc., 6 F.4th 229, 237 (2d Cir. 2021); Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 353 (2001)).  Defendants incorrectly conclude, however, that the CA Sherman Law claims are also preempted by the FDCA.  (Defs. Mem. at 21.)  The FDCA "places no limitations on the enforcement of state parallels," particularly where "separately enacted [state law] . . . provide[s] a predicate basis of liability" under that state parallel.  Forrett v. W. Thomas Partners LLC, 746 F. Supp. 3d 780, 789 (N.D. Cal. 2024)

(internal quotations and citation omitted).  Therefore, Plaintiffs adequately state a UCL claim

arising from the alleged violations of the FAL, CLRA, and the CA Sherman Law, but fail to state

a UCL claim premised on any violation of the FDCA.

Plaintiffs also adequately state a claim that the Defendants violated the UCL

through unfair business practices.  California appellate courts disagree on how to identify an

unfair business practice in the context of a consumer action under the UCL.  Some courts use a

balancing test, under which "a business practice is unfair 'if it is immoral, unethical, oppressive

or unscrupulous and causes injury to consumers which outweighs its benefits.'"  Ferrington v.

McAfee, Inc., No. 10-CV-1455, 2010 WL 3910169, at *13 (N.D. Cal. Oct. 5, 2010) (internal

citations omitted).  Other courts require the plaintiff to demonstrate that the practice "violates

public policy as declared by specific constitutional, statutory, or regulatory provisions."  Rubio v.

Cap. One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010) (internal citation omitted).  Plaintiffs have

adequately alleged that Defendants' labeling practice is unethical and causes injury to consumers,

and Defendants have not proffered any particular benefits of the practice.  (SAC ¶ 225.)

Lastly, Plaintiffs have adequately stated a claim that Defendants' business

practices are fraudulent.  A business practice is fraudulent for the purposes of a UCL claim when

members of the public are likely to be deceived by it, a question that is evaluated under a

"reasonable consumer standard."  Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015).

Plaintiffs must additionally demonstrate actual reliance, but this requirement can be "inferred

[when plaintiffs allege] the misrepresentation of a material fact."  Friedman v. AARP, Inc., 855

F.3d 1047, 1055 (9th Cir. 2017) (internal citations omitted).  A misrepresentation is material

when "it is the type of misrepresentation likely to be deemed significant to a reasonable person

considering whether to enter into the transaction."  Moore v. PaineWebber, Inc., 189 F.3d 165,

170 (2d Cir. 1999); see also Friedman, 855 F.3d at 1055.  Plaintiffs have repeatedly alleged that the representation that the product was "natural" was instrumental to their choice of product and willingness to pay.  (SAC ¶¶ 213, 266.)  Furthermore, materiality is generally a question of fact for the jury, and thus is not typically resolved at the motion to dismiss stage.  Friedman, 855 F.3d at 1056; see also Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 278 (2d Cir. 1992).

Illinois Statutory Claim

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, a plaintiff must show "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 574 (7th Cir. 2012)).

As explained above, Plaintiffs have adequately alleged that Defendants have engaged in business practices that a reasonable consumer could find deceptive.  (SAC ¶ 248.) Plaintiffs have also sufficiently alleged Defendants' intent that Plaintiffs rely on the misrepresentations.  (Id. ¶ 255.)  Lastly, it is undisputed that the practices in question occurred in the course of commerce.  (Id. ¶ 254.)  Plaintiffs have thus adequately stated an ICFA claim.

Common Law Claims

Defendants assert that Plaintiffs may not advance claims on behalf of a putative nationwide class because they only name Plaintiffs from three states.  (Pls. Mem. at 15.) Defendants are correct that Plaintiffs do not have standing to bring state statutory claims on behalf of residents of states where they themselves do not reside.  See Simington v. Lease Fin. Grp., LLC, No. 10-CV-6052-KBF, 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Plaintiffs

do not have an injury traceable to conduct that occurred in any other state than those in which they conduct business and thus, they cannot assert a claim under those states' consumer fraud statutes.").  Defendants' argument does not necessarily extend, however, to <u>common law</u> claims made on a nationwide basis.  When the characteristics of a particular class are a "logical[] antecedent" to issues of standing, a court may defer certain issues of standing until after the class certification stage.  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 612 (1997).  The Court finds that an inquiry into whether any state common law beyond the domiciles of the three named plaintiffs is relevant is best resolved at the class certification stage.  See Langan v. Johnson & Johnson Consumer Cos., 897 F.3d 88, 93(2d Cir. 2018) ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is question of predominance [for class certification]" (citations omitted)).

Because Plaintiffs limit their statutory claims to statewide classes and only assert a nationwide class regarding common law claims, at this juncture the Court will construe the common law claims as asserted under the laws of New York, California and Illinois, and consider the merits of each claim.

Fraud

The elements of common law fraud causes of action under New York, California, and Illinois law all comprise (1) a misrepresentation of material fact; (2) that was known to be false; (3) that induced reliance; and (4) resulted in harm.  Reed v. Luxury Vacation Home LLC, 632 F. Supp. 3d 489, 514 (S.D.N.Y. 2022) (New York); Hrothgar Invs. Ltd. v. Houser, No. 15-CV-01116, 2015 WL 5853634, at *7 (N.D. Cal. Aug. 18, 2015) (California); Fleury v. Gen. Motors, LLC, 654 F. Supp. 3d 724, 734 (N.D. Ill. 2023) (Illinois).  As discussed above, Plaintiffs

have alleged sufficient facts to suggest that a reasonable consumer may be deceived, and neither reasonableness nor materiality is typically resolved at the motion to dismiss stage. Plaintiffs have sufficiently alleged both reliance and harm throughout the complaint. (SAC ¶¶ 268, 282.)

As discussed above, the Second Circuit has recognized that facts concretely supporting Defendants' intent may not be available to plaintiffs at the pleading stage. S.Q.K.F.C., Inc., 84 F.3d at 634. In such cases, plaintiffs may plead "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. (citation omitted). Plaintiffs have alleged that defendants were aware of the high prices that consumers were willing to pay for natural products, and that this knowledge animated their decision to market the product as natural. (SAC ¶ 123.) The Court finds that Plaintiffs have, at this stage of the litigation, adequately stated a claim for fraud.

Constructive Fraud

The pleading requirements for constructive fraud under New York, California, and Illinois state law are similar to the requirements of fraud; a plaintiff must allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage. Jobscience, Inc. v. CVPartners, Inc., No. 13-CV-4519, 2014 WL 852477, at *2 (N.D. Cal. Feb. 28, 2014) (California); Burke v. 401 N. Wabash Venture, LLC, No. 08-CV-5330, 2010 WL 2330334, at *6 (N.D. Ill. June 9, 2010) (Illinois); Red Mountain Med. Holdings, Inc. v. Brill, 563 F. Supp. 3d 159, 173 (S.D.N.Y. 2021) (New York).

To determine whether a fiduciary or confidential relationship exists, courts typically "focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." Faktor v. Yahoo! Inc., No. 12-CV-5220-RA, 2013 WL 1641180, at *3 (S.D.N.Y. Apr. 16, 2013) (internal citation omitted); see also

Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc., 965 F. Supp. 2d 1141, 1150 (E.D. Cal. 2013) ("[U]nder California law, fiduciary or confidential relationship may arise whenever confidence is reposed by persons in the integrity and good faith of another.").  Ordinarily, "arms-length commercial transactions . . . do not give rise to fiduciary relationships."  Prickett v. N.Y. Life Ins. Co., 896 F. Supp. 2d 236, 250 (S.D.N.Y 2012); Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC, No. 17-CV-3805, 2018 WL 1805516, at *12 (N.D. Cal. Apr. 16, 2018); Pickens v. Mercedes-Benz USA, LLC, No. 20-CV-3470, 2021 WL 5050289, at *5 (N.D. Ill. Nov. 1, 2021).  A fiduciary duty may nevertheless arise "in the context of a commercial transaction upon a requisite showing of trust and confidence."  Muller-Paisner v. TIAA, 289 F. App'x 461, 466 (2d Cir. 2008) (recognizing potential for fiduciary duty where insurance company selling annuities actively helped customers choose between products).  Absent allegations of any special legal relationship, however, "mere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship."  Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006).  Illinois law maintains a similarly high bar for the establishment of a confidential relationship, taking into account differences in age, mental condition, health, education, and whether the allegedly servient party entrusted handling of business to the dominant party.  Wigod, 673 F.3d at 572 (citing Mitchell v. Norman James Const. Co., 684 N.E.2d 872, 879 (Ill. App. Ct., 5th Div. 1997)).

Even drawing all plausible inferences in their favor, Plaintiffs fail to allege a fiduciary relationship.  Plaintiffs assert that Defendants "had an obligation" to disclose the existence of PFAS because (1) the "Product pertained to matters of safety," (2) Defendants "were in full possession of such information," (3) Plaintiffs "relied upon Defendants to make full disclosures," and (4) the FDCA imposed specific labelling requirements on cosmetics

manufacturers.  (Pls. Mem. at 15; see also SAC ¶ 274.)  As explained above, Plaintiffs' claims

that are predicated on the FDCA are preempted.  Plaintiffs' other assertions fail to provide a basis

to elevate a commercial transaction to a fiduciary relationship.  Plaintiffs' recitation of duties

applicable to drug manufacturers is also inapposite because mouthwash may only be classified as

a drug for regulatory purposes when it claims therapeutic effects, such as treatment of plaque and

gingivitis.[5]  (Defs. Mem. at 19 n.24 (citing 21 U.S.C. § 321(g)).)  For these reasons, Plaintiffs

have failed to state a claim for constructive fraud and Count VII is accordingly dismissed.

Unjust Enrichment

Defendants assert that Plaintiffs' unjust enrichment claims should be dismissed

because Plaintiffs fail to allege which state law governs the claims.  (Defs. Mem. at 23 (citing In

re Nexus 6P Prods. Liab. Litig., 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018)).)  Courts in this

circuit have held that failure to specify the governing state law is not necessarily fatal to a

plaintiff's common law claim.[6]  See In re Ford Fusion & C-Max Fuel Econ. Litig., No. 13-MD-

2450-KMK, 2015 WL 7018369, at *38 (S.D.N.Y. Nov. 12, 2015) (considering plaintiffs' unjust

enrichment claims under the laws of the 12 proposed state subclasses even though plaintiffs

failed to "specify a state's common law on which the claim is based").  To state a claim for

unjust enrichment under New York law, "a plaintiff must allege that (1) defendant was enriched;

(2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and

good conscience require defendants to make restitution."  Reed, 632 F. Supp. 3d at 516 (citations

---

[5]    See generally Mouthrinse (Mouthwash), AMERICAN DENTAL ASSOCIATION,
      https://www.ada.org/resources/ada-library/oral-health-topics/mouthrinse-mouthwash.
      (last visited June 26, 2025) [https://perma.cc/M9FA-PQ8L].

[6]    Defendants do not assert this argument as a ground for dismissal of any of Plaintiffs'
      other common law claims.

omitted).  The requirements are substantively similar under Illinois and California law.  Banco

Panamericano, Inc. v. City of Peoria, 880 F.3d 329, 333 (7th Cir. 2018) (same under Illinois state

law); Dorris v. Danone Waters of Am., 711 F. Supp. 3d 179, 198 (S.D.N.Y. 2024) (same under

California state law).

Plaintiffs adequately plead unjust enrichment because they allege that Defendants

benefitted from misrepresenting their product as "natural" and inducing Plaintiffs to pay more for

it than they otherwise would have.  (See SAC ¶¶ 105, 285.)  Plaintiffs also allege that this

practice violates notions of fairness and equity.  (Id. ¶ 285.)  Together, these allegations meet the

basic requirements for unjust enrichment under the laws of California, Illinois, and New York.

In New York, however, a claim for unjust enrichment "will not survive a motion to dismiss

where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of

their other causes of action." Valcarcel v. Ahold U.S.A., Inc., 577 F. Supp. 3d 268, 283

(S.D.N.Y. 2021) (quoting Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d 370, 393

(S.D.N.Y. 2021)).  Plaintiffs have not pleaded in the alternative, nor have they explained how

their unjust enrichment claim is not duplicative under New York law.  (See SAC ¶ 286; Pls.

Mem. at 21.)  Therefore, Defendants' motion to dismiss is granted with respect to Plaintiffs' New

York unjust enrichment claim and denied with respect to the California and Illinois claims.

Primary Jurisdiction Doctrine

Defendants further argue that Plaintiffs' claims should be dismissed on primary

jurisdiction grounds because the FDA is under a Congressional mandate to study the safety of

PFAS in cosmetics.  (See Defs. Mem. at 23-24.)  The primary jurisdiction doctrine allows federal

courts to refer matters to an administrative agency in "cases involving technical and intricate

questions of fact and policy that Congress has assigned to a specific agency." Nat'l Commc'ns

Ass'n, Inc. v. Am. Tel. & Tel. Co., 46 F.3d 220, 223 (2d Cir. 1995) (quoting Goya Foods, Inc. v.

Tropicana Prods., Inc., 846 F.2d 848, 851 (2d Cir. 1988)).  The Second Circuit has generally

analyzed questions of primary jurisdiction by considering four factors:

> (1) Whether the question at issue is within the conventional experience of
> judges or whether it involves technical or policy consideration within the
> agency's particular field of expertise; (2) whether the question at issue is
> particularly within the agency's discretion; (3) whether there exists a
> substantial danger of inconsistent rulings; and (4) whether a prior
> application to the agency has been made.

Ellis v. Tribune Television Co., 443 F.3d 71, 82-83 (2d Cir. 2006).

       The Court disagrees with Defendants' conclusion that "each of the Ellis factors

weighs in favor of finding that the FDA has primary jurisdiction."  (Defs. Mem. at 24.)  First,

Plaintiffs correctly contend that the question before the Court is not what level of PFAS is safe

for use in cosmetics (which may well be a question beyond judicial expertise), but rather simply

whether the labeling on the product was misleading given the presence of any PFAS.  (Pls. Mem.

at 22.)  This issue is squarely "legal in nature and lies within the traditional realm of judicial

competence."  Petrosino v. Stearn's Prods., Inc., No. 16-CV-7735-NSR, 2018 WL 1614349, at

*10 (S.D.N.Y. Mar. 30, 2018.  Defendants have not made any showing of impending FDA

rulemaking on the use of "natural" in product labeling other than their reference to

demonstrations of Congressional intent that the FDA investigate the issue of PFAS safety risks in

the future.[7]  Defendants have also failed to show that there would be any significant danger of

---

[7]     District courts in this circuit have previously stayed proceedings on primary jurisdiction
grounds, finding that rulemaking regarding when it is appropriate to label food as
"natural" is within the FDA's discretion.  In re KIND LLC "Healthy and All Natural"
Litig., 209 F. Supp. 3d 689, 695 (S.D.N.Y. 2016); see also Holve v. McCormick & Co.,
Inc., 334 F. Supp. 3d 535, 561 (W.D.N.Y. 2018).  These courts have since unstayed these
cases, however, after finding that "there is no indication that guidance from the FDA . . .
on the term 'natural' is forthcoming."  See Holve v. McCormick & Co., Inc., No. 16-CV-
6702, 2020 WL 6809118, at *2 (W.D.N.Y. Oct. 9, 2020).

inconsistent rulings, or that Plaintiffs made any prior application to the FDA regarding the Product's labeling standards. Accordingly, the Court declines to dismiss the instant case on primary jurisdiction grounds.

Claims Against Colgate-Palmolive

Defendants maintain that Plaintiffs fail to allege a theory of liability or a cause of action against Colgate beyond the fact that Colgate is majority owner of Tom's. (Defs. Mem. at 24.) The Second Circuit has recognized a "presumption of separateness between a corporation and its owners." Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988). For a corporation to be held responsible for the torts of its subsidiary, "it is necessary that there be sufficient facts to pierce the corporate veil." Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P., 491 B.R. 335, 346 (S.D.N.Y. 2013) (internal citations omitted). Further, "piercing the corporate veil is a state law theory of liability that requires facts establishing that a controlling entity ignored the separate legal status of, and dominated the affairs of, a controlled entity." Id. (internal citation omitted). In cases that require a choice of state law, a federal court must "apply the choice of law rules of the forum state" to determine which jurisdiction's law should govern the claims. Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). Accordingly, "[u]nder New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded[.]" Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995). Because Tom's is incorporated in Maine, the Court must look to Maine law to establish whether assigning parent company liability would be appropriate. (SAC ¶ 20.)

The Maine Supreme Judicial Court has established a two-part test that must be satisfied "before a court may pierce the corporate veil." Johnson v. Exclusive Props. Unlimited, 720 A.2d 568, 571 (Me. 1998). A plaintiff must plead that "(1) the defendant abused the

privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." Id. The Maine Court has sometimes used the following twelve factors, adopted from Massachusetts case law, to aid in analysis of the first prong:

> To determine whether a shareholder has abused the privilege of a separate corporate identity under the first prong of the piercing doctrine, courts examine a variety of factors. For example, Massachusetts courts weigh the following twelve factors: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity[,] assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud.

Id. (citing George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 149-50 (D. Mass. 1998)); see also Snell v. Bob Fisher Enter., Inc., 106 F. Supp. 2d 87, 90 (D. Me. 2000). The Maine Court also noted that fraud may constitute a basis to confer liability on the parent company independent of the piercing analysis. Id. The District of Massachusetts has previously applied the above twelve factors to the relationship between Tom's and Colgate, finding that a plaintiff had "alleged sufficient wrongdoing on the part of Colgate" by stating that "Colgate purchased a majority share of Tom's stock for the specific purposes of (1) selling 'natural' products, (2) benefiting from Tom's dominance in the natural product market and (3) working with Tom's to market and sell products as 'natural', despite the inclusion of non-natural ingredients." Munsell v. Colgate-Palmolive Co., 463 F. Supp. 3d 43, 57 (D. Mass. 2020).

Here, Plaintiffs similarly allege that Colgate is aware that shoppers are willing to spend more on natural products, that this consumer behavior was a factor in Colgate's acquisition of Tom's, and that Colgate has "pervasive control over Tom's products." (SAC ¶ 123; Pls. Mem.

at 25.)  Plaintiffs have additionally alleged that denying relief would result in unjust or

inequitable outcomes.  (SAC ¶ 283.)  The Court find Plaintiffs' allegations and arguments

sufficient at this pleading stage and, accordingly, declines to dismiss Plaintiffs' claims against

Colgate.

Leave to Amend

Rule 15(a) provides that a court "should freely give leave [to amend] when justice

so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may be "properly be denied," however,

for "repeated failure to cure deficiencies by amendments previously allowed . . . among other

reasons."  Bischoff v. Albertsons Co., No. 22-CV-4961-CS, 2023 WL 4187494, at *7 (S.D.N.Y.

June 26, 2023) (Ruotolo v. City of New York, 514 F.3d 185, 191 (2d Cir. 2008)).  The Court's

November Order gave Plaintiffs notice of the deficiencies in standing for Plaintiffs Searle,

Salerno, and Wahl, and Plaintiffs failed to remedy those deficiencies in the SAC.  Given

Plaintiffs' failure to address the deficiencies of these standing claims, the Court declines to give

Plaintiffs another opportunity to amend their complaint with respect to these claims.

There is a particularly strong preference for allowing amendment when "the

plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading."

Allianz Glob. Invs. GmbH v. Bank of Am. Corp., 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020).

Because this is the first time the Court has put Plaintiffs on notice of the deficiencies of their

unjust enrichment and constructive fraud claims, Plaintiffs are granted leave to file a motion to

amend the SAC with respect to those claims **within 21 days** of the entry of this Memorandum

Opinion and Order.  Any such motion must comply with the applicable federal and local rules of

motion practice.  Should Plaintiffs fail to file a motion for leave to amend **within 21 days** of the

entry of this Memorandum Order, Plaintiffs' constructive fraud and New York unjust enrichment claims will be dismissed with prejudice and without further notice.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is granted in part and denied in part. Defendants' motion is granted pursuant to Federal Rule of Civil Procedure 12(b)(1) with respect to all claims asserted by Plaintiffs Salerno, Wahl, and Searle and as to the claims for injunctive relief asserted by Plaintiffs Esquibel, Halim, and Zirpoli. The common law claims of constructive fraud (Count VII) and New York state claim for unjust enrichment (Count VIII) of Plaintiffs Esquibel, Halim, and Zirpoli are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs may make a motion to amend their complaint to address the deficiencies in these latter claims with respect to Plaintiffs Zirpoli, Esquibel, and Halim **within 21 days of the entry of this order**. Defendants' motion is denied with respect to all other claims asserted by Plaintiffs Zirpoli, Esquibel, and Halim. This case remains referred to Magistrate Judge Figueredo for general pretrial management.

This Memorandum Order resolves docket entry no. 62.

SO ORDERED.

Dated: New York, New York
       June 27, 2025

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              Chief United States District Judge