**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Abigail Esquibel, et al.,<br>                    Plaintiff(s),<br><br>  against<br><br>Colgate-Palmolive Co., et al.,<br>                    Defendant(s). | CIVIL ACTION NO.: 1:23-00742-LTS-VF<br><br>**JOINT ELECTRONIC DISCOVERY**<br>**SUBMISSION AND ORDER** |

**JOINT ELECTRONIC DISCOVERY SUBMISSION AND PROPOSED ORDER**

One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Submission and Proposed Order (and any subsequent to this) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Joint Submission and Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

**(1)**     **Brief Joint Statement Describing the Action:**

Plaintiffs have brought a class action on behalf of themselves and others similarly situated alleging that Defendants' labeling of its Tom's Wicked Fresh! Mouthwash (the "Product") is misleading because the Product's label contains the word "natural," but the Product allegedly contains per- and polyfluoroalkyl substances ("PFAS"). Plaintiffs' second amended complaint alleges the following claims: (1) violation of California's False

Advertising Law, Business & Professions Code § 17500; (2) violation of California's Unfair Competition Law, Business & Professions Code § 17200 et seq.; (3) violation of California's Consumer Legal Remedies Act, Civil Code § 1770; (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS § 505/1 et seq.; (5) fraud; (6) constructive fraud; and (7) unjust enrichment.

    **(a)**    **Estimated amount of Plaintiff(s)' Claim(s):**

        Less than $100,000

        Between $100,000 and $999,999

        [X] Between $1,000,000 and $49,999,999

        More than $50,000,000

        Equitable Relief

        Other (if so, specify)

    **(b)**    **Estimated amount of Defendant(s)' Counterclaim(s)/Cross-Claim(s):**

        Less than $100,000

        Between $100,000 and $999,999

        Between $1,000,000 and $49,999,999

        More than $50,000,000

        Equitable Relief

        [X] Other (if so, specify): No counterclaims asserted.

**(2)**    **Competence:** Counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues

relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

**(3)** **Meet and Confer:** Pursuant to Fed. R. Civ. P. 26(f), counsel must meet and confer regarding matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel now certify that they met and conferred to discuss these issues on August 20, 2025.

**(4)** **Unresolved Issues:** After the meet-and-confer conference(s) taking place on the date(s) listed above, the following issues remain outstanding and/or require court intervention: None at this time.

To date, the parties have addressed the following issues:

**(5)** **Preservation:**

    **(a)** The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc. To the extent that the parties have reached agreement as to preservation methods, provide details below:

Consistent with the parties' obligations under Rule 26(f) of the Federal Rules of Civil Procedure, the parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation. The parties will disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief. As a result of investigation and/or discovery, the parties may identify additional data

3

sources that may or may not need to be searched or preserved pursuant to the foregoing. The parties will meet and confer about preserving such ESI as any additional data sources are identified.

    **(b)**    State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications:

The parties do not agree to exchange the dates, contents, and/or recipients of "litigation hold" communications.

    **(c)**    The parties anticipate the need for judicial intervention concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored Information:

None at this time.

**(6)**    **Search and Review:**

    **(a)**    The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below:

The parties will disclose and discuss the custodial and noncustodial data sources likely to contain responsive information. The parties will confer regarding the selection of custodians whose files are likely to contain documents and electronically stored information relating to the subject matter of this litigation.

The producing party shall provide a list of proposed search terms. The receiving party may provide any additional search terms that it believes are necessary to identify responsive

4

documents. After receiving any additional proposed terms from the receiving party, the producing party will provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, including families). The parties shall meet and confer regarding the proposed search terms following receipt of the search term hit list and shall use best efforts to agree to a set of search terms as soon as is practicable.

**(b)** State if the parties anticipate the need for judicial intervention concerning the search and review of electronically stored information:

None at this time.

**(7)** **Production:**

**(a)** Source(s) of Electronically Stored Information: The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:

The Parties anticipate that discovery may occur from one or more of the following: email, word processing documents, spreadsheets, presentations, and through publicly available internet and other sources.

**(b)** Limitations on Production: The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

5

The parties agree to meet and confer to discuss any potential limitations on production that may become necessary during the course of discovery.

**(c)** Form(s) of Production:

(1) The parties have reached the following agreements as to the form(s) of productions:

The parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images, or in color PDF images, with the exception of spreadsheet and presentation type files, source code, audio and video files, and documents with tracked changes in the metadata, which shall be produced in native format. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs, PDFs, and JPGs will show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFFs, PDFs, and/or JPGs of e-mail messages should include the BCC line. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has

been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents and e-mail thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

The parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other

7

than attorney-client or work product privilege. The attachments will be produced sequentially after the parent e-mail.

  (2) Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):

Spreadsheets and PowerPoint presentations shall be produced in native format in accordance with the requirements set forth in paragraph 7(c)(1).

  (3) The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production:

None at this time.

**(d)** Privileged Material:

  (1) Identification: The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

The parties shall identified privileged documents on a privilege log that complies with the requirements of Federal Rule of Civil Procedure 26(b)(5). The parties need not log: (a)documents that have been produced with redactions, unless, in case of an email communication, a party also redacts the sender, recipient(s), and subject line of the email; and (b) communications with counsel that post-date the filing of this lawsuit.

  (2) Inadvertent Production/Claw-Back Agreements: Pursuant to Fed R. Civ. Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to Fed. R. Evid. 502(d), etc.):

The parties agree to enter into a Confidentiality Agreement, which will govern the parties' rights and obligations to claw-back material that has been inadvertently produced without proper privilege designations or confidentiality designations.

    (3)    The parties have discussed a 502(d) Order: Yes ☒

The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.

**(e)**    Cost of Production: The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

    (1)    Costs:

The Parties expect costs to vary depending on the volume and nature of custodians selected, the nature of the Parties' requests for production, and the search terms agreed to by the parties.

    (2)    Cost Allocation: The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

None.

    (3)    Cost Savings: The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

The parties agree to meet and confer to discuss the potential to use Technology-Assisted Review.

**(f)**    State if the parties anticipate the need for judicial intervention concerning the production of electronically stored information:

None at this time.

**(8)**  **Other Issues:**

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

| | |
|---|---|
| Party: Plaintiffs Abigail Esquibel, et al. | By: */s/ Jeremy Francis* |
| Party: Defendants Colgate-Palmolive Co., et al. | By: */s/ Dean N. Panos* |

Additional Instructions or Orders, if any: The parties are directed to file a joint status update by September 29, 2025. The parties may request a discovery conference once a dispute is ripe to be addressed.

Dated:     New York, New York
             August 25, 2025

                                        SO ORDERED

                                        _____
                                        **VALERIE FIGUEREDO**
                                        **United States Magistrate Judge**